# EXHIBIT 1

## CMS GUIDANCE

Frequently Asked Questions on the Emergency Medical Treatment and Labor Act (EMTALA) and Psychiatric Hospitals

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C2-21-16
Baltimore, Maryland 21244-1850



## Center for Clinical Standards and Quality/Quality, Safety & Oversight Group

**Ref: QSO-19-15-EMTALA**

**DATE:** July 02, 2019

**TO:** State Survey Agency Directors

**FROM:** Director
Quality, Safety & Oversight Group

**SUBJECT:** Frequently Asked Questions on the Emergency Medical Treatment and Labor Act (EMTALA) and Psychiatric Hospitals

---

### Memorandum Summary

- **EMTALA and Psychiatric Hospitals:** Medicare-participating psychiatric hospitals are required to comply with EMTALA requirements.

- **Frequently Asked Questions:** CMS is providing the attached Frequently Asked Questions document to address common inquiries from psychiatric hospitals regarding compliance with EMTALA.

---

### Background

Medicare-participating hospitals, including psychiatric hospitals, are required to comply with EMTALA. The requirements are consistently applied in hospitals and critical access hospitals with emergency departments and labor and delivery departments. At times, however, there is confusion or misconceptions regarding EMTALA obligations in psychiatric hospitals.

The attached Frequently Asked Question document addresses common inquiries specific to EMTALA compliance in psychiatric hospitals. Intake or assessment areas in psychiatric hospitals may meet the threshold of "dedicated emergency department" as defined in the EMTALA regulations at §489.24(b) and be required to meet EMTALA screening and stabilization requirements. In addition, since psychiatric hospitals offer specialized services, they are required to meet the recipient hospital requirements at §489.24(f).

The CMS State Operations Manual Appendix V for EMTALA contains the regulations and extensive interpretive guidelines. Appendix V can be accessed at the following link:
https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/som107ap_v_emerg.pdf

Page 2 – State Survey Agency Directors

**Contact:**  Inquiries regarding this memorandum and attachment can be submitted to the following CMS resource mailbox:  HospitalSCG@cms.hhs.gov.

**Effective Date:**  Immediately.  This Frequently Asked Questions document should be shared with all survey and certification staff, their managers and the State/Regional Office training coordinators within 30 days of this memorandum.

/s/
Karen Tritz
Acting Director

Attachment: QSO19-XX.02 EMTALA and Psychiatric Hospital FAQs

cc:  Survey and Certification Regional Office Management

Page 3 – State Survey Agency Directors

**Frequently Asked Questions Regarding EMTALA and Psychiatric Hospitals**

CMS Quality, Safety & Oversight Group – July 2, 2019

1) Question: Do surveyors investigate state law and state scope of practice regulations while conducting an EMTALA investigation and how do those factors apply to an EMTALA citation?

    CMS Response:  Hospitals are required to be in compliance with Federal and State laws. Surveyors can investigate if there are concerns regarding whether staff performing medical screening exams are practicing within their State scope of practice.  If healthcare professionals are expected, per hospital bylaws or rules, to perform services that are outside their scope of practice, the hospital may be out of compliance with 489.24(a)(1).

2) Question: How do surveyors evaluate whether a staff person is qualified to perform a Medical Screening Exam?

    CMS Response:  The surveyor can review State scope of practice as well as hospital bylaws or rules and regulations to determine if the medical screening exams being performed are within a   professional's scope of practice.

3) Question: What is the expectation of a psychiatric hospital when a medical emergency presents in terms of who can conduct a medical screening exam and what is required in terms of stabilization and transfer for non-psychiatric emergencies?

    CMS Response:  EMTALA requires hospitals to perform medical screening examinations within their capabilities.  If the psych hospital doesn't have the ability to perform a comprehensive medical screening exam  (or provide stabilizing treatment), but the screening exam it performs indicates that the patient may have an emergency medical condition, the hospital is required to arrange an appropriate transfer to a facility for further evaluation and treatment.  The hospital is expected to use its resources to perform the exam and provide care within its capabilities prior to transfer.  This might be as simple as performing ongoing assessments with repeat vital signs and ensuring the patient is in a safe environment.  If there are clinical issues present, those should be addressed within the hospitals capabilities, e.g. providing oxygen, administering first aid, starting CPR, etc.  There is no expectation that a psych hospital with basic clinical services would be expected to provide the same level of comprehensive medical assessments or treatment as an acute care hospital.

    This is no different than a small rural hospital that needs to send a patient to another hospital to complete the medical screening exam to determine if there is an emergency medical condition, e.g. for specialized testing or consultation with a specialist.  Prior to transfer, however, the hospital is expected to provide ongoing assessments of the patient, address any immediate needs, keep the patient safe and as stable as possible given the staff and facilities available.

Page 4 – State Survey Agency Directors

4) Question related to #4 and #5: How does EMTALA intersect with admission? Can we cite a facility under EMTALA for failing to admit a patient and if so, under what circumstances?

   CMS Response: If the hospital has the staff and facilities to stabilize the emergency medical condition, it is expected to do so. This includes inpatient admission, as appropriate. Having an empty inpatient bed does not always translate to having the capability or capacity to stabilize the emergency medical condition. The decision is based on the unique circumstances at the time of the admission request. For instance, a hospital's failure to adhere to its own policies and procedures regarding admission decisions may be grounds for a citation. Further, even if a hospital follows its policies and procedures regarding admission decisions, there may still be an EMTALA violation if the facility is withholding otherwise available stabilizing treatment based on a patient's ability to pay.

   The following guidance is in Appendix V:
   > "The capacity to render care is not reflected simply by the number of persons occupying a specialized unit, the number of staff on duty, or the amount of equipment on the hospital's premises. Capacity includes whatever a hospital customarily does to accommodate patients in excess of its occupancy limits §489.24 (b). If a hospital has customarily accommodated patients in excess of its occupancy limits by whatever mean (e.g., moving patients to other units, calling in additional staff, borrowing equipment from other facilities) it has, in fact, demonstrated the ability to provide services to patients in excess of its occupancy limits."

   For hospitals with limited resources available to both inpatients and outpatients, it can be appropriate to transfer patients to other hospitals even though the index hospital may have open inpatient beds. A common example is when there are limited numbers of specialists available, e.g. only one or two neurologists on staff who are on vacation or otherwise unavailable and are not able to admit/treat the patient. Although the hospital has open beds at the time of the request, it doesn't have the capabilities needed for that patient at that time.

   If surveyors identify concerns regarding the use, or not, of available beds, the hospital would be expected to demonstrate why they were unable to provide care to patients in need of stabilizing treatment during that time when inpatient beds were available. This information is frequently documented in the medical record to justify the transfer.

5) Question: under what circumstances has a psychiatric facility met its requirements under EMTALA to conduct a Medical Screening Exam and can send a resident out for medical clearance?

   CMS Response: In determining whether this standard is met, we are guided by EMTALA's stated purpose, which is to prevent hospitals from denying necessary medical care to individuals that may not be able to pay for the care.

Page 5 – State Survey Agency Directors

> Further, the hospital is expected to perform a medical screening examination within its capabilities. For example, if there is concern regarding a psych emergency that may have clinical components, a hospital could satisfy its obligation to provide an appropriate medical screening exam if a professional provides a screening exam designed to identify, to the best of the professional's ability, any emergency medical conditions, and thereafter transfers the patient to a hospital with specialized services and equipment for further examination and treatment , i.e. neurologist, vascular surgeon, CT scanner, MRI, etc.

6) Question: What is the distinction between an Emergency Medical Condition and a Non-Emergency Medical Condition for purposes of issuing an EMTALA citation—can we justify an EMTALA citation based on a situation that did not indicate the presence of an Emergency Medical Condition?

   CMS Response:  EMTALA only applies if the medical screening examination determines there is an emergency medical condition:

   > *Emergency medical condition* means—
   > (1) A medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain, psychiatric disturbances and/or symptoms of substance abuse) such that the absence of immediate medical attention could reasonably be expected to result in—
   > (i) Placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy;
   > (ii) Serious impairment to bodily functions; or
   > (iii) Serious dysfunction of any bodily organ or part; or
   > (2) With respect to a pregnant woman who is having contractions—
   > (i) That there is inadequate time to effect a safe transfer to another hospital before delivery; or
   > (ii) That transfer may pose a threat to the health or safety of the woman or the unborn child.

   If there is no emergency medical condition detected, EMTALA ends.  Not every patient that presents to a dedicated emergency department (hospital ED, labor & delivery department, psych intake/assessment area) has an emergency medical condition.

7) Question: Can an ER physician in a facility that does not provide psychiatric care conduct the mental health screening?

   CMS Response:  It is within the scope of practice for ED physicians and practitioners to evaluate patients presenting with mental health conditions, same with any other medical, surgical, or psychiatric presentation.  The ED practitioner may utilize hospital resources to assist with the examination and treatment or arrange appropriate transfers if additional resources are needed.