IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **KIMBERLY HARTMAN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **CENTRA HEALTH, INC.,** | ) |
| | ) Case No.: 6:20CV00027 |
| **STEPHANIE EAST,** | ) |
| | ) |
| and | ) |
| | ) |
| **NATHAN CAMPBELL,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Centra Health, Inc. ("Centra"), Stephanie East ("East") and Nathan Campbell ("Campbell") (together, "Defendants") file this Reply in Support of their Motion to Dismiss the First Amended Complaint ("FAC") (Doc. 17) of Plaintiff Kim Hartman ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.    Centra's Arguments Rely on the Factual Allegations in the FAC.**

Plaintiff devotes much of her opposition to wrongfully accusing Centra of relying on facts outside of the FAC. Plaintiff's Opp. (Doc. 28) at 2-3. Although these facts are true (and Plaintiff does not deny them), Centra's motion to dismiss is not based on anything outside of the FAC. Centra recited these additional facts in the Procedural History merely to advise the Court of the rest of the story that Plaintiff selectively omits from the FAC.

Centra's arguments rely exclusively on the factual allegations in the FAC and the documents incorporated by reference. Plaintiff's own allegations refute her claim that East's report to the Virginia Health Care Foundation ("VCHF") was defamatory. FAC at ¶ 16. Plaintiff

admits that Centra terminated her employment involuntarily, fired her and accused her of committing "several violations of Centra policy" necessitating the withholding of money from her final paycheck. *Id.* at ¶¶ 21, 59-62, 75-79, Ex. D & F. Moreover, Plaintiff's representation to Denise Konrad ("Konrad") that "she left employment for personal reasons" is a lie. *Id.* at ¶ 80. Plaintiff's communications with Konrad about her scholarship application which are referenced in the FAC and attached as **Exhibit B** to Defendants' Supporting Brief (the "Konrad Communications") confirm that Plaintiff lied and told Konrad "that she resigned because her position required more hours than she could work while pursuing her PMHNP" (Psychiatric Mental Health Nurse Practitioner) degree. *Id.* at ¶ 80.[1]

Directly refuting Plaintiff's claim that East's report to the VCHF was defamatory (FAC at ¶ 16), the Konrad Communications confirm (a) that Plaintiff, in fact, was fired and (b) that Plaintiff falsely represented to Konrad and the VHCF that she voluntarily resigned over excessive work hours to preserve her scholarship applications under false pretenses. Incredibly, Plaintiff has the audacity to represent to this Court that "**STEPHANIE EAST LIED TO A SCHOLARSHIP OFFICIAL IN ORDER TO PREVENT MS. HARTMAN FROM RECEIVING A SCHOLARSHIP**," when her own allegations and documents confirm not only that she was the liar but also that she "was eventually awarded the scholarship" about which she complains. FAC at ¶¶ 80, 87; Defendants' Supporting Brief at Exhibit B.

---

[1] When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts may "consider 'documents incorporated into the complaint by reference.'" *Jarvis v. City of Alexandria*, 2017 U.S. Dist. LEXIS 89950, at *4 (E.D. Va. 2017) (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). When testing the legal sufficiency of the TAC, Centra may supply and the Court may consider all pertinent documents referred to in the TAC. *See, e.g., Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment"); *Halzack Watkins v. Educational Credit Management Corp.*, 2011 WL 2015479, *1 n.1 (E.D. Va. 2011); *accord Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir.2006) (unpublished per curiam decision).

The Konrad Communications which Plaintiff references in the FAC (FAC at ¶ 80) control and Plaintiff's conflicting allegations should be disregarded.[2]  Given that Plaintiff has been in possession of the Konrad Communications since well before filing this lawsuit, it is disappointing that she continues to knowingly assert these false allegations through multiple rounds of pleadings in hopes of manufacturing a bogus defamation claim where none exists.

Plaintiff's own allegations likewise refute her argument that she never permitted East (or anyone else) to speak with anyone at the Virginia Health Care Foundation." Plaintiff's Opp. (Doc. 28) at 13.  Plaintiff admits that she had a pending scholarship application with VCHF and signed an authorization for Centra to verify her employment position and status and communicate directly with VCHF concerning her scholarship application.  FAC at ¶ 76; Plaintiff's Opp. (Doc. 28) at 13.  Plaintiff's authorization for Centra which is referenced in the FAC and attached as **Exhibit A** to Defendants' Supporting Brief (the "Centra Authorization") confirms that "**I, Kimberly Hartman, authorize my employer [Centra] to provide the employment information requested by the Virginia Health Care Foundation**." *Id.* at ¶ 76 (emphasis added).  The Centra Authorization entitled "Psychiatric-Mental Health NP Certificate Scholarship Program Verification of Employment Accommodation Form" was signed by Plaintiff on May 31, 2019.  The Centra Authorization asks a series of questions regarding Plaintiff and her employment position and status and specifically requests that Centra indicate whether or not it intends "to employ the individual in a PMHNP role post-program completion."  Defendants' Supporting Brief at Exhibit B.

---

[2] A court is not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *see also Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 984 n.1 (D. Md. 2002) ("When the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail") (*citing Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

Directly refuting Plaintiff's claim that "Neither Centra nor Stephanie East had any legitimate interest in Ms. Hartman's scholarship application on June 10, 2019, the Centra Authorization confirms (a) that Centra and East, in fact, had such an interest and were specifically authorized to provide information about Plaintiff to the VHCF as of May 31, 2019, and (b) that the information East conveyed concerning Plaintiff's employment status was specifically requested by VHCF and specifically authorized to be provided by Plaintiff. FAC at ¶ 78; Defendants' Supporting Brief at Exhibit A.

These facts are woefully inadequate to plausibly allege a defamation claim (or any other claim) and negate its very existence. Although the Court is required to construe well-plead factual allegations in the light most favorable to Plaintiff, such deference does not "allow the court to assume that a plaintiff 'can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged.'" *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Recognizing the insufficiency of her factual allegations, Plaintiff attempts to rely on her conclusory legal labels and name calling to support her claims. Plaintiff's Opp. (Doc. 28) at 13-15. Plaintiff's unsubstantiated and self-serving statements that Defendants acted "maliciously" engaged in a "cover-up," "beat on her door," "lied to VDH surveyors," "deliberately lied to Konrad," made a "false report," "wrongfully recouped money," "retaliated," attempted to have her "prosecuted on false charges of embezzlement," attempted to strip her "of her nursing license by making a false complaint to the nursing board," and "abused and defamed [her] in a malicious campaign to destroyed her in retaliation for her EMTALA complaint (*Id.*; FAC at ¶¶ 54-125) are not facts and should be disregarded. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("Courts need not credit conclusory legal terms and allegations that are not reasonably supported by factual

allegations"); *United States v. Rosen*, 487 F. Supp. 2d 721, 724 n.4 (E.D. Va. 2007) (courts should "disregard any arguments or conclusions of law masquerading as facts," and refuse to "accept … unwarranted deductions of fact, or unreasonable inferences"); *Switzer v. Thomas*, 2013 WL 693090, at *2 (W.D. Va. 2013) (courts should not accept "conclusory factual allegations devoid of any reference to actual events").

## II. Plaintiff Fails to State an EMTALA Retaliation Claim (Count 1).

Plaintiff's alleged EMTALA retaliation claim is not based on any report of an *actual violation* of EMTALA, as required to state an EMTALA whistleblower claim, but on her general concern with VBH's alleged "autism, out of area" exclusion from CAPU's *inpatient* admission criteria. The problem for Plaintiff is that she does not allege sufficient facts to support a claim that she reported an *actual* EMTALA violation. Instead, Plaintiff merely alleges that she made a complaint about *inpatient* admission criteria "in the general direction of 'patient protection'" that was in no way tied to excluding patients base their ability to pay. *See Lane v. Wellmont Health Sys.*, 46 F. Supp. 2d 477, 479 (W.D. Va. 1999) (EMTALA "is intended to address the problem of disparate treatment of patients based, at bottom, on the patients' ability to pay their medical bills"); *Genova v. Banner Health*, 734 F.3d 1095, 1100-01 (10th Cir. 2013) (J. Gorsuch recognizing that a report of an *actual* violation is required to state an EMTALA whistleblower retaliation claim and stating "it's clear that Congress's purpose in EMTALA was to fire a rifle at discrete and carefully chosen targets, not to loose a federal blunderbuss in the general direction of 'patient protection.'").

As noted in Centra's Supporting Memorandum, admission of an individual as an inpatient ends any and all obligations under EMTALA. *See, e.g., Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 884 (4th Cir. 1992) (finding transfer and admission of an individual to a hospital's inpatient psychiatric ward is insufficient to trigger EMTALA for the transferee hospital); *Hussain v. Kaiser*

*Found. Health Plan,* 914 F.Supp. 1331, 1335 (E.D.Va.1996) ("If EMTALA liability extended to inpatient care, EMTALA would be convert[ed]...into a medical malpractice statute, something it was never intended to be"); 73 FR 48434-01, 48661, 2008 WL 3833378 (Aug. 19, 2008) (CMS regulations "finalizing a policy that a hospital with specialized capabilities is not required under EMTALA to accept the transfer of a hospital inpatient"); 42 C.F.R. § 489.24(a)(1)(ii) ("If the hospital admits the individual as an inpatient for further treatment, the hospital's obligation under [EMTALA] ends"); *see also* 42 C.F.R. § 489.24(d)(2). Nonetheless, Plaintiff complains that the individuals at issue should have been admitted as inpatients. Compl. at Ex. B

In her opposition, Plaintiff alleges, that "[o]nce a patient presents to any emergency room of <u>any</u> hospital [in the United States[3]] (the transferring hospital), if stabilization of the patient requires specialized care that the transferring hospital lacks, then another participating hospital (the receiving hospital) cannot refuse transfer admission for stabilization of the patient if the receiving hospital has both the capability and the capacity to stabilize the patient." Plaintiff's Opp. (Doc. 28) at 4. Plaintiff, however, omits from this broad-sweeping generalization that no such transfer is permitted or required unless the requested transfer is an "appropriate transfer" under EMTALA. *See, e.g.,* 42 U.S.C.A. § 1395dd(C)(1) ("If an individual at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(3)(B)), the hospital may not transfer the individual unless—[among other things] *the transfer is an appropriate transfer* (within the meaning of paragraph (2)) to that facility.") (emphasis

---

[3] This is simply not accurate. A transfer must be "appropriate" and a transfer over great distances is inappropriate. *See, e.g.,* Appendix V of the CMS State Operations Manual at 64-65 (Rev. 191, July 19, 2019) (CMS guidance stating: "Hospitals that request transfers must recognize that the appropriate transfer of individuals with unstabilized emergency medical conditions that require specialized services should not routinely be made over great distances, bypassing closer hospitals with the needed capability and capacity.").

added). Because Plaintiff fails to allege sufficient facts to support a claim that such a transfer was required, she fails to state an EMTALA whistleblower retaliation claim.

In her opposition, Plaintiff, without citing any judicial authority in support, purports to craft strawman elements for her claim that bypass the necessary "appropriate transfer" inquiry. *See* Plaintiff's Opp. (Doc. 28) at 5. Not only do these purported elements misrepresent the law, they entirely omit Plaintiff's obligation to plausibly plead that an "appropriate transfer" was refused, including: (1) that VBH had actual knowledge of an unstabilized emergency medical condition at the time of the transfer request; (2) that the transferring hospitals lacked the capability or capacity to stabilize the individuals; (3) that the transferring hospitals failed to stabilize any emergency medical condition; and (4) that VBH's CAPU had necessary specialized capabilities for stabilization that the transferring hospitals lacked.

As an initial matter, "none of [EMTALA's] 'stabilization or transfer' requirements become operative unless the [transferor] Hospital diagnosed the emergency medical condition of which plaintiff complains." *Green v. Reddy*, 918 F. Supp. 329, 336 (D. Kan. 1996) (citing *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 883 (4th Cir. 1992)). "Absent record evidence that the Hospital knew of [the unstablized emergency medical condition], the transfer provisions set forth in [former] § 1395dd(e) [(now 1395dd(f))] and § 1395dd(c)(2)(C) do not apply." *Id.* Plaintiff, however, does not allege Centra had actual knowledge of the diagnoses for these individuals at the time the transfer requests was refused. Plaintiff, of course, omits this from her strawman elements.

In any event, EMTALA does *not* impose an obligation to "continuously… 'stabilize' [a individual's] condition" beyond providing "immediate, emergency stabilizing treatment with appropriate follow-up." *Bryan v. Rectors and Visitors of University of Virginia*, 95 F.3d 349, 350-51 (4th Cir. 1996). With respect to psychiatric emergencies, CMS has recognized that:

"Psychiatric patients are *considered stable when they are protected and prevented from injuring or harming him/herself or others*." Appendix V of the CMS State Operations Manual at 51 (Rev. 191, July 19, 2019). Longer-term, inpatient care, by contrast, is not required by EMTALA. *See, e.g., Bryan v*, 95 F.3d at 352 ("It seems manifest to us that the stabilization requirement was intended to regulate the hospital's care of the patient ***only in the immediate aftermath of the act of admitting her for emergency treatment***.... It cannot plausibly be interpreted to regulate medical and ethical decisions outside that narrow context") (emphasis added); *Fonseca v. Kaiser Permanente Med. Ctr. Roseville*, 222 F. Supp. 3d 850, 869 (E.D. Cal. 2016) (citing *Bryan* and finding that EMTALA did not require a hospital to maintain a brain-dead patient on a ventilator because it was "at best a question of long-term care…. [that] raises no serious questions under EMTALA"; "EMTALA does not obligate [the hospital] to maintain the patient on life support").

Here, as alleged, Plaintiff's FAC is "at best a question of long-term [inpatient] care." *See id.* In fact, nowhere in Plaintiff's FAC does she allege that the hospitals where these individuals initially presented, lacked the capacity to provide emergency, stabilizing treatment. Yet such allegations are absolutely necessary and essential threshold allegations without which VBH cannot plausibly be alleged to have any necessary specialized capabilities and without which VBH cannot have any plausible obligation to accept the transfers. *See, e.g.,* 42 U.S.C.A. § 1395dd (e)(2)(i) ("An appropriate transfer to a medical facility is a transfer--*in which the transferring hospital provides the medical treatment within its capacity* which minimizes the risks to the individual's health); 42 U.S.C.A. § 1395dd(f) (recognizing that acceptance obligations are limited to "appropriate transfers").

Even the authority Plaintiff provided in her Opposition recognizes CMS's position that "*[i]t is within the scope of practice for ED physicians* and practitioners to evaluate patients

presenting with mental health conditions, same with any other medical, surgical, or psychiatric presentation. The ED practitioner may utilize hospital resources to assist with the examination *and treatment* or arrange appropriate transfers *if* additional resources are needed." Plaintiff's Opp. Exhibit 1 (Dkt. 21-1) at 6 (emphasis added). Plaintiff, of course, alleges nothing to suggest the Emergency Departments could not and did not "protect[] and prevent[][these individuals] from injuring or harming him/herself or others," and Plaintiff completely fails to allege that these Emergency Departments lacked the capacity to treat any emergency medical condition. In short, Plaintiff cannot, as a matter of law, plausibly allege that VBH's CAPU possessed the type of specialized capability that the Emergency Departments lacked. In fact, Plaintiff utterly fails to plead any specific capability of VBH's CAPU beyond its ability to admit children under ten for longer-term, inpatient care.

In her FAC and Opposition, Plaintiff makes much of her allegation that VBH's CAPU is one of a limited number of secure psychiatric units in Virginia that admit children under the age of ten as inpatients. *See, e.g.,* FAC at ¶¶ 23-24; Plaintiff's Opp. (Dkt. 28) at 7. As noted above, long-term care capabilities, however, are not the type of specialized, emergency capabilities envisioned by § 1395dd(g), and the capabilities of VBH's CAPU are meaningless without allegations that show how those capabilities compare to the capabilities of the transferring hospitals with respect any needed stabilizing treatment. *See* Appendix V of the CMS State Operations Manual at 61 (Rev. 191, July 19, 2019) ("Lateral transfers, that is, transfers between facilities of comparable resources and capabilities, are not required by § 489.24(f)").

Without citing *any* authority, Plaintiff lists five (5) inquiries that must be answered in the affirmative in order to determine whether Centra violated EMTALA. Plaintiff's concocted test, which has no bearing on whether or not Centra violated EMTALA, fails to acknowledge that any

transfer of a patient only imposes obligations on the recipient hospital in the event that the transfer is "appropriate." *See* 42 CFR § 489.24(f) ("A participating hospital that has specialized capabilities or facilities…may not refuse to accept from a referring hospital…an appropriate transfer of an individual who requires such specialized capabilities…"). Under the plain language of the statute, the transfer was not "appropriate" and therefore Centra never had any obligations under EMTALA.

Plaintiff is correct that the CAPU at Virginia Baptist Hospital offers the specialized services contemplated by 42 CFR § 489.24(f). Plaintiff's Opp. (Doc. 28) at 7. As such, in the case of an appropriate transfer, it is generally correct that Centra may not refuse to accept a transfer from a transferring hospital. However, the transfers at issue in this case were not "appropriate" under the statute's plain meaning and therefore Centra had no obligation to accept the transfer of those two patients. As Plaintiff alleges, the two patients at issue had not been stabilized, and were in need of stabilization. FAC ¶ 31. Under 42 CFR § 489.24(e), "[i]f an individual at a hospital has an emergency medical condition that has not been stabilized…the hospital may not transfer the individual unless. – (i) [t]he transfer is an appropriate transfer…" The statute goes on to state that "[a] transfer to another medical facility will be appropriate only in those cases in which - …(ii) [t]he receiving facility-…(B) has agreed to accept transfer of the individual and to provide appropriate medical treatment." 42 CFR § 489.24(e)(2). It's not disputed that Centra did not agree to accept transfer of the individuals. As such, any attempted transfer was not appropriate, and Centra had no obligation to accept transfer of the patients. Because it did not have any obligation to accept the patients, Centra did not violate the EMTALA and as such, Plaintiff's whistleblower claim under EMTALA must fail.

### III. Plaintiff Fails to State a Defamation Claim Against Centra and East (Count 2)

Plaintiff's second cause of action alleges defamation by Centra and East and based on two separate statements: (1) a report by East to the VHCF, and (2) a report by East to other Centra employees. Neither statement at issue gives rise to a plausible claim for defamation.

#### a. East's Alleged Report to the VCHF.

In the FAC, Plaintiff alleges that East made a "false report to the Virginia Health Care Foundation that Ms. Hartman had been fired 'for cause,'" and that this statement is defamatory. FAC ¶ 146. The premise that East's statement that Plaintiff was fired "for cause" is false is refuted by Plaintiff's other assertions in the FAC. By alleging that Centra retaliated against her and terminated her for her complaints regarding alleged EMTALA violations, Plaintiff necessarily acknowledges that she was terminated "for cause," and that she did not leave employment at Centra by her own volition. Put differently, if Plaintiff was not terminated for cause by Centra, then she would have no basis for her claims of retaliation.

In addition to her implicit acknowledgement that she was terminated for cause, Plaintiff's own allegations in the FAC confirm as much. Paragraphs 1, 4, 5, 17, 21, 59, 60, 149, 167, 168, 169 and 170 of the FAC all acknowledge Centra's termination of Plaintiff's employment for cause. Plaintiff cannot have it both ways. She either was terminated for cause and her defamation claims cannot stand, or she was not terminated for cause and her claims for retaliation must fail.

#### b. East's Alleged Report to Unspecified Other Centra Employees.

Plaintiff also alleges that East defamed Plaintiff by "falsely reporting to Centra employees after Ms. Hartman's employment had been terminated that Ms. Hartman was 'mentally ill' and that Ms. Hartman 'posed a risk of gun violence' to these employees." FAC ¶ 149. East's

statements are privileged, not made with malice as to support overcoming the applicable privilege, and were never published to a third party such as to provide a basis for a defamation claim.

Virginia law is clear that a qualified privilege exists in the context of employment relationships and applies to statements "made between co-employees and employers in the course of employee or discharge matters." *Larimore v. Blaylock*, 259 Va. 568, 572 (2000). This privilege recognizes that "employment matters are occasions of privilege in which the absence of malice is presumed". *Id.* Contrary to Plaintiff's conclusory allegation that East acted with malice, there are no facts alleged to show malice on the part of East and Plaintiff's conclusory allegations do not give rise to a pleading sufficient to overcome the qualified privilege. *Tomlin v. IBM Corp.*, 84 Va. Cir. 280, 288 (Fairfax Co. 2012) (citing *Jarrett v. Goldman*, 67 Va. Cir. 361 (Portsmouth 2005)). In the "[employment] context, 'actual malice' is 'behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made.'" *Union of Needletrades v. Jones*, 268 Va. 512, 520 (2004) (quoting *Gazette, Inc. v. Harris*, 229 Va. 1, 18 (1985)).

Centra employees are not considered third parties and the alleged statements cannot be defamatory because they were not published to third parties, as required to state a defamation claim. *Shaheeen v. WellPoint Companies, Inc.*, 490 Fed. App'x 552, 555 (4th Cir. 2012) ("publication element of a defamation action requires dissemination of the statement to a third party in a nonprivileged context"); *Cobb v. Rector & Visitors of Univ. of Va.*, 84 F.Supp.2d 740 (W.D.Va. 2000) ("No publication occurs when the communication, which regards a matter of corporate interest, remains entirely within a corporate entity.") So long as the subject matter of the statement relates to the job function or scope or duties to the employees who hear the statement, there is no publication. *Montgomery Ward & Co. v. Nance*, 165 Va. 363, 380 (1935). Here the

allegation is that challenged statements were made relating to matters of safety at Centra. Though the identity of the persons who heard the statement is not alleged, the FAC gives no indication that a discussion of safety or dangers at work would fall outside the scope of employment for whomever heard the statements at issue.

### IV. Plaintiff Fails to State a Defamation Claim Against Centra and Campbell (Count 4)

The sole basis for Plaintiff's defamation claim against Centra and Campbell is Campbell's transmission of a letter, that included the statement that Plaintiff had exhibited "aggressive and threatening behavior towards various staff members." FAC 159. Hartman contends that "[a] claim that any person exhibited 'aggressive and threatening behavior to staff members' is not an expression of opinion, but instead an allegation of fact that implies a purported observation of events and people." Plaintiff's Opp. (Doc. 28) at 15. This argument is nonsensical and if accepted would foreclose the possibility of any statements being considered opinions.

Contrary to Plaintiff's assertions, it is not necessary for Campbell to have observed anything for him to be able to "form any opinion of his own regarding Ms. Hartman's conduct." Plaintiff's Opp. (Doc. 28) at 16. The Supreme Court of Virginia has been clear on the principles to be applied when determining whether a statement is one of opinion or fact:

> 'Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion.' Additionally, '[s]peech that does not contain a provably false factual connotation is sometimes referred to as 'pure expressions of opinion'' 'It is firmly established that pure expressions of opinion are protected by both the First Amendment of the Federal Constitution and Article I, Section 12 of the Constitution of Virginia and, therefore, cannot form the basis of a defamation action.'

*Raytheon Technical Services Co. v. Hyland*, 273 Va. 292, 641 S.E.2d (2007); see also *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132 (2003) ("Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion.") (internal citation

omitted). It's indisputable that the statements contained in the letter are relative in nature. Furthermore, the statements depend not largely, but entirely upon both Campbell's and Centra's viewpoints. As alleged by Plaintiff herself, "Campbell acted within the scope of his employment by Centra Health, Inc. when he transmitted" the letter to the LPD. FAC ¶ 154. The letter, sent on behalf of Centra, reflected the viewpoint of both Centra and Campbell. Even if Plaintiff was correct that "Campbell never observed anything," it is indisputable that Centra's agents and employees observed Hartman's behavior and had ample opportunity to develop their own opinions, that ultimately informed the opinions of the corporate entity, Centra. By asserting her third cause of action against Centra and Campbell collectively, Hartman intends to hold Centra responsible for its employee's letter. By arguing that Campbell did not personally observe Hartman and therefore cannot form an opinion as to Hartman's conduct, Hartman attempts to separate Centra and Campbell, notwithstanding holding Centra and Campbell collectively responsible for the letter. Once again, Hartman tries to have it both ways. Campbell's personal observation is not required for the development of an opinion on behalf of Centra regarding Hartman's behavior.

Plaintiff attempts to distract from the fact that Campbell's letter was not defamatory by making unsupported allegations that Campbell sent the letter with devious motives. For instance, Plaintiff asserts that "Campbell transmitted these defamatory statements to 'prepare' the LPD officers to believe that Ms. Hartman was aggressive and dangerous…" and that because Plaintiff "routinely deals with law-enforcement officers…Campbell's false statements to the LPD were deliberately intended to damage Ms. Hartman's reputation." Plaintiff's Opp. (Doc. 28) at 16. These baseless assertions are false. Campbell's statements were made to the LPD in order to communicate information necessary to ensure that the LPD was prepared in the event Plaintiff did

not comply with Centra's instructions that Plaintiff remain off Centra's property, necessary to protect its employees, patients and guests.

### V. Plaintiff Fails to State a *Bowman* Claim (Count 4).

A *Bowman* claim must be based on a violation of a Virginia law, and therefore a violation of EMTALA cannot serve as the basis for a *Bowman* claim. In arguing that "Virginia law subsumes the EMTALA in hospital whistleblower actions," Plaintiff misconstrues and misapplies Virginia law. In her opposition, Plaintiff focuses on the Code of Virginia § 32.1-125.4, arguing that that provision "subsumes" the EMTALA for Plaintiff's alleged blowing of the whistle. Plaintiff's Opp. (Doc. 28) at 17. This argument fails for at least two reasons: (1) the cited Article of the Code of Virginia is entirely irrelevant to EMTALA, and (2) even if the Article were relevant, Plaintiff's argument ignores the express exemption in the Virginia code for Centra's facility.

First of all, the Article of the Code of Virginia to which Plaintiff cites does not speak to EMTALA. Code of Virginia § 32.1-125.4 is part of Chapter 5, Article 1 of the Code of Virginia. Article 1 is titled "Hospital and Nursing Home Licensure and Inspection," and governs the same – the establishment and operation of hospitals and nursing homes, including the standards by which those institutions are to be licensed and the inspections that occur to ensure compliance with such standards. EMTALA, on the other hand, is aimed at protecting patients, and in Plaintiff's own words "is a federal law that prohibits 'patient dumping' by hospitals." FAC ¶ 2. The whistleblower provision contained in § 32.1-125.4 contemplates complaints made to the licensing authorities of the Commonwealth of Virginia, not those alleging violation of EMTALA, which is entirely separate from the standards by which Centra's licenses are governed. Plaintiff cannot pull in its EMTALA claim by citing an irrelevant and inapplicable statute.

Second, even if Article 32 of the Code of Virginia was relevant to EMTALA, Plaintiff entirely ignores the express provisions of the Virginia Code, which states that "[t]he provisions of §§ 32.1-123 through 32.1-136 shall not be applicable to:…(ii) an institution *licensed by the Department of Behavioral Health and Developmental Services*." VA. CODE § 32.1-124 (emphasis added). Plaintiff herself alleges that "Centra's secure psychiatric units are *licensed by the Virginia Department of Behavioral Health and Developmental Services*." FAC ¶ 25 (emphasis added). The exemption targets the section of the Code of Virginia, § 32.1-125.4, that Plaintiff relies upon to allegedly bring in her EMTALA claim. Failing to acknowledge her contradictory argument, Plaintiff's only recourse is to attempt to muddy the waters by arguing that Centra's facility is a hospital, not an institution, and therefore this code section does not apply. Plaintiff cannot have it both ways. Plaintiff cannot allege on the one hand that Centra's secure psychiatric units - the only part of the hospital relevant to this action - are licensed by the Department of Behavioral Health and Developmental Services, while alleging on the other hand that Centra's secure psychiatric units are not subject to an exception specifically aimed at healthcare facilities with such a license. Based on Plaintiff's own allegations, Centra's secure psychiatric units are exempt from the provisions of Code of Virginia § 32.1-125.4, and thus her *Bowman* claim must fail as no violation of Virginia law provides a basis for her claim.

Finally, as already explained, even if EMTALA could somehow support a *Bowman* claim (which it cannot), Plaintiff's *Bowman* claim still fails because her EMTALA claim is invalid.

## CONCLUSION

For the foregoing reasons and those set forth in its Supporting Memorandum (Doc. 27), Defendants respectfully requests that: (1) Plaintiff's FAC be dismissed with prejudice; and (2)

Defendants be awarded their attorneys' fees, costs and expenses incurred in the defense of this action, and such additional relief as the Court deems just and proper.

Dated:  September 15, 2020　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　CENTRA HEALTH, INC.

　　　　　　　　　　　　　　　　　　　　By:　　　/s/ Joshua F. P. Long　　　　　．
　　　　　　　　　　　　　　　　　　　　　　　　Of Counsel

Joshua F. P. Long, Esq. (VSB No. 65684)
Joshua R. Treece, Esq. (VSB No. 79149)
J. Walton Milam III, Esq. (VSB No. 89406)
WOODS ROGERS PLC
P. O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
jlong@woodsrogers.com
jtreece@woodsrogers.com
wmilam@woodsrogers.com

Counsel for Defendants Centra Health, Inc., Stephanie East and Nathan Campbell

## CERTIFICATE OF SERVICE

　　　　I hereby certify that on September 15, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to all counsel of record:

　　　　　　　　　　　　　　　　　　　　　　/s/ Joshua F. P. Long　　　　　．