THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **KIMBERLY HARTMAN** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CENTRA HEALTH, INC.,** )<br>)<br>**STEPHANIE EAST, and** )<br>)<br>**NATHAN CAMPBELL,** )<br>)<br>**Defendants.** )<br>)<br>) | Case No.: 6:20CV00027 |

**CENTRA'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL
<u>PRODUCTION OF DOCUMENTS</u>**

Defendant Centra Health, Inc. ("Centra"), by counsel, files its response in opposition to Plaintiff's Motion to Compel production of documents identified on Centra's privilege logs. (the "Motion").

**<u>INTRODUCTION</u>**

Plaintiff's Motion arises from her apparent dissatisfaction with four privilege logs produced by Centra that unequivocally satisfy the standards set forth by the Federal Rules of Civil Procedure. At its core, Plaintiff appears to take issue with Centra producing multiple privilege logs. But Plaintiff's subjective concerns ignore the realities of this case. Plaintiff's lawsuit makes hyperbolic allegations that her termination arose from a systemic conspiracy to violate EMTALA patient admission standards and silence Plaintiff's purported complaints. Due to the breadth of these claims and Plaintiff's discovery requests, Centra has had to narrow a universe of 330,000 potential documents into a manageable review. To date, Centra has

produced over 5,000 pages of documents, and has diligently reviewed over 15,000 documents in the course of discovery. At the same time, Centra's extensive discovery investigation has necessitated that Centra supplement its privilege logs on multiple occasions as new documents are found. Thus, what Plaintiff deems obfuscation is actually Centra's attempt to thoroughly investigate and produce responsive documents. Centra is being vilified for doing its job.

Nonetheless, Plaintiff broadly criticizes various aspects of Centra's privilege log, while specifically referencing seventy-five (75) documents she believes were either improperly withheld as privileged or are subject to an imaginary crime-fraud exception. At the time of this filing, Centra has produced sixty-five (65) of the seventy-five (75) documents identified in Plaintiff's Motion to Compel, and provided an additional rolling document production.

Plaintiff also levies meritless objections to the privilege logs. First, Plaintiff claims that the privilege logs are defective because documents listed on Centra's privilege logs are not "correlated" to categories of Plaintiff's document requests. Yet Plaintiff fails to cite any case law or rule that requires such actions, likely because there is no such requirement. Next, Plaintiff argues that the privilege logs were produced in an "illegible" font size, while simultaneously providing screen-shots of various privilege log entries that clearly identify the document number and corresponding descriptions.

Additionally, Plaintiff complains that Centra included documents on its privilege logs between non-attorneys, but does not identify a single document with this alleged defect for Centra to probe. Plaintiff also ignores that the vast majority of documents listed on the privilege logs were created after Plaintiff threatened (and later initiated) retention of attorneys and a

lawsuit—thus invoking the work product doctrine that extends to documents created by non-attorneys in anticipation of litigation.[1]

Finally, without any factual support whatsoever, Plaintiff makes the baseless argument that all documents cited on Centra's privilege log were created in furtherance of a crime or fraud. First and foremost, the EMTALA retaliation claim is not a claim that would permit applicability of the crime-fraud exception. Regardless, Plaintiff relies entirely on speculation and fails to provide any evidence that the documents in the privilege logs actually furthered the alleged crime or fraud. As provided below, Centra had a number of justifiable reasons to terminate Plaintiff, including improper use of company funds, working split-shifts to receive double pay, falsely accusing her co-workers of intentionally violating laws and conducting intra-company affairs—all while attempting to extort money from Centra. Put simply, Plaintiff's retaliation claim has no basis in fact or law and does not provide a basis to lift protections provided under the attorney client privilege and work product doctrine.

Centra will continue to diligently review and produce non-privileged documents that are relevant and responsive to this case, and will supplement its privilege logs as necessary. But Plaintiff fails to provide a cognizable rationale to compel Centra to produce documents that have already been properly reviewed and identified on Centra's privilege logs.

**FACTUAL AND PROCEDURAL HISTORY**

**1. Summary of Relevant Facts**

On June 6, 2019, Plaintiff was terminated from her position as RN Unit Manager at the Centra's Child and Adolescent Psychiatric Unit ("CAPU") at Virginia Baptist Hospital, as the

---

[1] *See* Fed. R. Civ. P. 26(b)(3), Advisory Cmt. Note (1970).

result of a twenty-four (24) hour meltdown including over twenty hostile emails and verbal altercations with Centra employees.

*Relevant Events Prior to Plaintiff's Termination*

In the months leading up to her termination, Plaintiff, a salaried employee, knowingly worked split-rate shifts (working hourly rate shifts as a frontline residential nurse (RN) during the same hours as her salaried unit manager role), resulting in the receipt of double pay. (Exhibit A.) This was a violation of Centra policy. Plaintiff had no authorization from Centra to work split-rates at any point during her employment. (*Id.*) During the same time, Plaintiff was placed on a performance improvement plan by her supervisor, Stephanie East, for excessive and improper expenditures on her Purchase Card ("P-Card") issued by Centra. (*Id.*) The total amount of excessive expenditures totaled over $5,000. (*See* Exhibit B.) Examples of the improper purchases included furniture, office supplies, multiple gift cards, two sets of washer/dryer machines, game controllers, and two train tickets for a personal trip to New York.

On May 28, 2019, Plaintiff's supervisor, Stephanie East, held a meeting with Plaintiff to discuss her split-shifts and timecard entries. (Exhibit A.) During this meeting, Plaintiff fell into a temper tantrum about how no one appreciated her efforts, that her presence was necessary for the CAPU to function properly, and a number of other grievances. Plaintiff threatened resigning from Centra but later advised East that she intended to stay. (*Id.*)

On May 30, 2019, East held a second meeting with Plaintiff to discuss her improperly working split rate hourly shifts, solicitation of contributions from her subordinates for a GoFundMe campaign for her daughter's medical bills, overspending on her P-card, and violations of Centra's workplace policies. (*Id.*) In response, Plaintiff expressed her desire to be

promoted to a director and advised that she had recently turned down an offer from VCU to stay at Centra. (*Id.*)

On June 2nd, 2021, Plaintiff sent an email to East, Dr. Judd, and two other Centra employees concerning the denial of two patients to the CAPU, which Plaintiff claimed was an EMTALA violation, and accused Dr. Annapareddy of being solely responsible for the denials. (Exhibit C.) Both East and Dr. Judd responded to Plaintiff's email thanking her for reaching out to the facilities and for her efforts to care for the patients. (*Id.*)

On June 5th, East and Dr. Judd met with Plaintiff to discuss adolescent admission/exclusion criteria to the CAPU, find opportunities for improvement and develop a plan to assemble the physicians, review the criteria and incorporate Plaintiff's suggestions. East and Dr. Judd then advised Plaintiff that, while they appreciated her suggestions, sending inflammatory emails and calling out mental health leaders via email was not the best way to raise or resolve issues. (Exhibit B.) Plaintiff became very upset, yelled, and made aggressive accusations towards East and Dr. Judd. (*Id.*) Immediately following Plaintiff's outbursts on June 5th, and in light of her prior behavior towards Ms. East, Plaintiff was placed on leave.

### *Plaintiff's Conduct After Being Placed on Leave and Subsequent Termination.*

Beginning at 7:30 a.m. on June 6, 2021, Plaintiff sent the first of over twenty (20) threatening and accusatory emails to Centra personnel and attempting to extort Centra and pay her large sums of money. Specifically, Plaintiff sent no less than 16 emails from her personal email account to Shannon Meadows, a Centra Human Resource employee, making a variety of long-winded accusations and requesting enormous severance packages in exchange for execution of a confidentiality agreement. (Exhibit D.). At 4:58 p.m., Ms. Meadows sent a written email correspondence to Plaintiff again informing of her termination. (Exhibit E.) That night, Plaintiff

sent again sent numerous emails to Centra staff making the same belligerent accusations and claiming that she would be retaining an attorney to pursue claims against Centra.[2] (*Id.*) After months of similar behavior, Plaintiff proceeded to initiate this lawsuit.

### 2. Relevant Procedural History

After issuing her first set of requests for production of documents, Plaintiff requested that Centra investigate the email accounts for multiple Centra employees using a prepared set of broad search terms. Upon applying Plaintiff's parameters, Centra learned that the requested review would encompass over 330,00 potential documents—an unreasonable and unduly burdensome figure based on the simplicity of the issues in this case. Centra has slowly been able to refine its review to a manageable figure, and already produced 5,000 pages of documents by way of rolling productions, while supplementing its privilege logs as necessary.

*The First and Second Privilege Logs*

Due to the nature of the claims alleged in the Complaint and Amended Complaint, Centra initially determined that many of the documents requested by Plaintiff were either privileged under Virginia's Medical Peer Review statute, Va. Code § 8.01-581.1, or alternatively constituted work product and/or attorney-client communications. The alternative grounds of privilege were clearly identified in the Privilege Logs.

*The Third and Fourth Privilege Logs*

After Centra produced the first two privilege logs, the parties conducted a meet-and-confer about Centra's assertion of privilege under the Virginia Medical Peer Review statute. At the conclusion of that meet-and-confer, Centra agreed that the statute arguably did not apply to

---

[2] Centra has previously summarized the events that transpired following Plaintiff's termination in its Brief in Support of its Motion to Dismiss, and incorporates the facts cited therein.

many of the documents identified in the Second Privilege Log and indicated that a supplemental privilege log would be forthcoming. All privilege assertions relying on the Virginia Medical Peer Review statute have been withdrawn and all documents have or will be produced to Plaintiff. However, counsel for Centra did not represent that it was withdrawing privilege for any documents identified on the Second Privilege Log that were omitted from the Third or Fourth Privilege Log.

Thereafter, Centra produced a "Supplemental Privilege Log" (the "Third Privilege Log") and a Fourth Privilege Log, which superseded the First and Second Privilege Logs. As Centra has conveyed to Plaintiff, the Third and Fourth privilege logs are the only submissions that remain active in this case.

## ARGUMENTS AND AUTHORITIES

### I. Plaintiff's Motion is Largely a Moot Point.

While Plaintiff makes a number of broad accusations concerning Centra's four privilege logs, she only specifically identifies seventy-two (72) document entries that allegedly have a defect. (Pl. Brief, ECF 46, at 4-6.) In the course of responding to Plaintiff's Motion, Centra has concurrently produced most of the seventy-two documents listed in section one of Plaintiff's Motion. Specifically, Centra has produced all fifty-six documents that were included on the Second Privilege Log but not on the Third and Fourth Privilege Logs, and have produced eleven (11) of the twelve (12) documents that did not initially contain privilege assertions.[3] Thus, Section 1 of Plaintiff's Motion to Compel has already been resolved.

### II. Plaintiff Has Not Identified A Cognizable Deficiency in The Privilege Logs.

---

[3] The only document Centra did not produce is communications for litigation hold requirements that are clearly subject to the attorney work produce doctrine.

{2835496-1, 106642-00164-01} 7

Much of Plaintiff's Brief consists of one-sentence arguments that fail to specifically identify the foundation for the underlying complaint. For example, Plaintiff broadly asserts that the dates and descriptions of the same documents vary between different versions of the privilege log without actually identifying which documents contain the alleged defect. At the same time, Plaintiff fails to identify any rule preventing Centra from refining and supplementing its privilege logs in the course of discovery. Additionally, Plaintiff asserts that Centra was required to correlate documents identified in its log to Plaintiff's discovery requests, but fails to point to a rule that would require Centra to take such actions. Put differently, Plaintiff asks Centra to take measures far beyond what the Federal Rules require.

Plaintiff's Motion also grossly mischaracterizes the contents of the four privilege logs. Specifically, Plaintiff asserts that different privileges are claimed with regard to the same documents in different versions of the privilege logs. (Pl. Brief at 7-8.) However, Plaintiff fails to note that Centra asserted multiple grounds of privilege over the same documents in the same privilege logs. Centra's Second Privilege Log partially relied on a privilege granted under the Virginia Medical Peer Review statute, but also alternatively relied on the general attorney client and work product privileges as grounds to withhold the documents. Centra's alternative grounds for privilege were retained and identified in the Third and Fourth Privilege Logs. Nothing in the Federal Rules prevent Centra from asserting alternative grounds for privilege.

Finally, Plaintiff incorrectly asserts that Centra cannot assert attorney-client or work product privilege in certain documents solely because they do not include an attorney. Nearly all of the documents identified on the privilege logs were created after Plaintiff was terminated on June 6, 2021 and after she began threatening litigation against Centra. The Advisory Comment Notes to Federal Rule of Civil Procedure 26(b)(3) expressly recognize that work product

protection extends, not merely to materials prepared by an attorney or at the direction of an attorney, "but also … to materials prepared in anticipation of litigation … by or for a party or any representative acting on [its] behalf."  Simply stated, regardless of the author, all documents created by Centra after that June 6, 2021 were properly withheld and identified on the privilege logs as attorney work product.

**III.     Plaintiff Cannot Rely on the Crime-Fraud Exception to Gain Access to Documents Withheld on Centra's Privilege Log.**

Without any credible basis, Hartman argues that Centra cannot assert attorney client/work product privilege over any communications or documents created in anticipation of this lawsuit because they were created to further an alleged crime or fraud.

"The crime-fraud exception to the attorney-client privilege provides that a client's communications with an attorney will not be privileged if made for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir.1989).  The burden rests with the moving party of proving that the crime/fraud exception applies to the non-moving party's privileged documents. *In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005).  The "party invoking the crime-fraud exception must make a *prima facie* showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *Id.* (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir.1999)).

       a.  Plaintiff Has Not Made a *Prima Facie* Showing that Centra was Engaged in <u>Criminal or Fraudulent Activity when it Terminated Hartman</u>.

Under the first prong of the crime/fraud analysis, Plaintiffs must provide "evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Marquette Equip. Fin., LLC v. Rowe Fine Furniture, Inc.*, No. 1:07CV676, 2008 WL 11512190, at *1 (E.D. Va. Mar. 13, 2008). Mere speculation as to a crime or fraud is insufficient. *See Billings v. Stonewall Jackson Hosp.*, 635 F. Supp. 2d 442, 446–47 (W.D. Va. 2009). And simply "because some communications may be related to a crime is not enough to subject that communication to disclosure; the communication must have been made with the intent to further the crime." *In re Antitrust Grand Jury*, 805 F.2d 155, 168 (6th Cir. 1986).

> 1. *Hartman, an at-will employee, was terminated for reasons unrelated to voicing her concern over alleged EMTALA violations in the CAPU.*

Plaintiff appears to argue that the crime-fraud exception should apply to communications between Centra and its attorneys relating to Hartman's termination, which she claims to be retaliatory under 42 U.S.C. § 1395dd(i) ("EMTALA"). To state a *prima facie* EMTALA retaliation case, Plaintiff would need to produce evidence showing: (1) Centra penalized or took an adverse action against Plaintiff, and (2) that the penalty or adverse action was <u>because</u> the employee reported an <u>actual</u> violation of EMTALA. *See* 42 U.S.C § 1395dd(i); *Genova v. Banner Health*, 734 F.3d 1095, 1099 (10th Cir. 2013).

Without actually pointing to any specific exhibit or corresponding statements, Plaintiff generally asserts that "she has made the requisite *prima facie* showing in the exhibits she attached to her Amended Complaint. (Pl. Mem. Supp. Mot. To Compel at 10-11.) The exhibits include:

- A June 2, 2019 email from Hartman to various Centra employees alleging that Centra improperly denied patients into the Child and Adolescent Psychiatric Unit, and further

alleging that Dr. Annaparedy was responsible for the patent denials. (Am. Compl., Exhibit B);

- Text Messages between Stephanie East and Hartman in which East allegedly agrees with many of Hartman's concerns (Am. Compl., Exhibit C);

- A June 6, 2019 email from Centra to Hartman informing of her termination as an employee at Centra and <u>thanking her</u> for raising potential EMTALA or ethical concerns.  (Am. Compl., Exhibit D);

- A July 25, 2019 "Statement of Deficiencies and Plan of Correction" issued by the Department of Health and Human Services Centers for Medicare & Medicaid Services to Centra, which does <u>not</u> identify an EMTALA violation.  (Am. Compl., Exhibit E);

- A June 12, 2019 letter from Centra to Hartman noting her destruction of a company-issued Iphone 8 and multiple improper purchases with her Centra purchasing card (Am. Compl., Exhibit F); and

- A December 31, 2019 letter from Centra to Kim Hartman informing of her ban from Centra premises due to "aggressive and threatening behavior toward various staff members" and recording conversations with Centra staff.  (Am. Compl., Exhibit G);

While the exhibits in the Amended Complaint arguably provide that Hartman reported an alleged EMTALA violation and that she was later terminated, Plaintiff fails to provide any evidence connecting her termination to her report of an EMTALA violation, or that there was an actual EMTALA violation in the first place.

Importantly, much of the artificial mystery of Plaintiff's termination can be understood by reviewing documents produced by Centra to Plaintiff, including notes by her supervisor, Stephanie East.  (*See* Exhibits A-E.)  These documents establish that, in the days leading to her

termination, Plaintiff (a) had been verbally reprimanded for working split shifts at the hospital (working under hourly rates in addition to annual salary), (b) falsely accused a doctor of having adulterous relationships with "two girlfriends," (c) boasted about "having dirt" on two Centra medical providers, (d) reflected a general attitude of insubordination and threatening behavior towards Centra staff, and (e) attempted to extort money from Centra. (*See* Exhibit B.) In sum, Plaintiff's report of alleged EMTALA violations had nothing to do with her termination; it instead arose from her persistent harmful behavior towards Centra staff.

At bottom, Plaintiff's reference to the crime-fraud exception arises entirely from "mere speculation" as to the reason for her termination. Such a reaching and incorrect belief is insufficient to invoke the crime-fraud exception. *Billings*, 635 F. Supp. 2d at 446–47.

> 2. *Centra's communication's with its inside and outside Counsel were not in furtherance of a crime or fraud.*

Even assuming *arguendo* Plaintiff produced sufficient evidence to establish a *prima facie* case of retaliation, she has not made a showing that any of the documents in Centra's privilege logs were in furtherance of the alleged EMTALA retaliation. Three of the four documents cited in Plaintiff's Motion to Compel occurred *after* the alleged retaliatory act (her termination from Centra), and thus could not be in furtherance of any unlawful retaliation. *United States v. Zolin*, 491 U.S. 554, 562 (1989) (noting that the crime-fraud exception does not apply to communications concerning crimes or frauds that occurred in the past); *In re Fed. Grand Jury Proceedings*, 938 F.2d 1578, 1582 (11th Cir. 1991) (holding that the crime-fraud exception only applies to current or future illegal acts—not past acts). Moreover, Plaintiff has no evidence to support her belief that any documents created prior to her termination actually furthered a crime or fraud. While Centra maintains that these documents are properly privileged and not subject to

disclosure, the Court can rest assured that no document or communication withheld in this case aided Centra in furtherance of an alleged crime or fraud.

## CONCLUSION

Plaintiff has presented no compelling procedural or substantive reason to compel Centra to produce its privileged communications or forfeit its privilege. Plaintiff's Motion should be denied.

Dated: May 7, 2021

Respectfully submitted,

CENTRA HEALTH, INC.

By: ___/s/Joshua F. P Long_____

Elizabeth Guilbert Perrow, Esq. (VSB No. 42820)
Daniel T. Sarrell, Esq. (VSB No. 77707)
Joshua F. P. Long, Esq. (VSB No. 65684)
Joshua R. Treece, Esq. (VSB No. 79149)
WOODS ROGERS PLC
P. O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
dsarrell@woodsrogers.com
jlong@woodsrogers.com
jtreece@woodsrogers.com

Counsel for Defendant Centra Health, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 7th day of May, 2021, a true and accurate copy of the foregoing was emailed to the following recipient:

M. Paul Valois
JAMES RIVER LEGAL ASSOCIATES
7601 Timberlake Road
Lynchburg, VA 24502
Telephone: 434-845-4529
Facsimile: 434-845-8536
mvalois@vbclegal.com

              /s/   Joshua F. P. Long