**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **KIMBERLY HARTMAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.: 6:20CV00027** |
| **CENTRA HEALTH, INC., and** | ) | |
| | ) | |
| **STEPHANIE EAST,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS CENTRA HEALTH, INC.'S AND STEPHANIE EAST'S ANSWER AND
AFFIRMATIVE AND OTHER DEFENSES AND CENTRA'S COUNTERCLAIMS**

Defendants Centra Health, Inc. ("Centra") and Stephanie East ("East"), (together, "Defendants"), by counsel, submit this Answer and Affirmative and Other Defenses to the First Amended Complaint (ECF No. 17) ("Complaint") of Plaintiff Kimberly Hartman ("Hartman"), and Centra, by counsel, submits these Counterclaims against Hartman as follows:

## PRELIMINARY STATEMENT

Defendants deny all allegations in Hartman's Complaint that are not specifically and expressly admitted herein. To the extent any heading, section or footnote in Hartman's Complaint alleges facts, those facts are denied unless expressly admitted herein.

## DEFENDANTS' ANSWER

Defendants, in response to the correspondingly-numbered paragraphs of Hartman's Complaint, state as follows:

1.      The allegations in paragraph 1 of the Complaint are legal conclusions to which no response is required. If a response is deemed required, it is admitted only that Hartman purports to assert federal and state claims in this action. All other allegations in paragraph 1 of the Complaint are denied.

2.      The allegations in paragraph 2 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 2 are denied to the extent they are inconsistent with or contrary to the Emergency Medical Treatment & Labor Act, 42 U.S.C. § 1395dd(i) ("EMTALA").  All other allegations in paragraph 2 of the Complaint are denied.

3.      The allegations in paragraph 3 of the Complaint are denied.

4.      The allegations in paragraph 4 of the Complaint are denied.

5.      The allegations in paragraph 5 of the Complaint are denied.

6.      The allegations in paragraph 6 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, it is admitted only that Hartman purports to assert a federal EMTALA claim in this action.  All other allegations in paragraph 6 of the Complaint are denied.

7.      The allegations in paragraph 7 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, it is admitted only that Hartman purports to assert state wrongful termination and defamation claims in this action.  All other allegations in paragraph 7 of the Complaint are denied.

8.      The allegations in paragraph 8 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, it is admitted only that Hartman purports to assert that venue is proper in this Court.  All other allegations in paragraph 8 of the Complaint are denied.

9.      The allegations in paragraph 9 of the Complaint are admitted.

10.      In response to the allegations in paragraph 10 of the Complaint, Defendants admit that Centra is a regional nonprofit health care system based in Lynchburg, Virginia, and that Centra

owns and operates Lynchburg General Hospital ("LGH") and Virginia Baptist Hospital ("VBH"). Except as expressly admitted, the allegations in paragraph 10 of the Complaint are denied.

11.     The allegations in paragraph 11 of the Complaint are admitted.

12.     No response is required to paragraph 12 of the Complaint because former Defendant Nathan Campbell ("Campbell") has been dismissed from this action pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

13.     Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 13 of the Complaint and, therefore, deny the same.

14.     Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 14 of the Complaint and, therefore, deny the same.

15.     Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 15 of the Complaint and, therefore, deny the same.

16.     Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 16 of the Complaint and, therefore, deny the same.

17.     The allegations in paragraph 17 of the Complaint are denied.

18.     The allegations in paragraph 18 of the Complaint are admitted.

19.     In response to the allegations in paragraph 19 of the Complaint, Defendants admit that Hartman was Unit Manager of the Child and Adolescent Psychiatric Unit ("CAPU") and East was her supervisor.  Except as expressly admitted, the allegations in paragraph 19 of the Complaint are denied.

20.     Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 20 of the Complaint and, therefore, deny the same.

21.     The allegations in paragraph 21 of the Complaint are denied.

22.     In response to the allegations in paragraph 22 of the Complaint, Defendants admit that Centra provides mental health services to patients at the CAPU, the Acute Adult Psychiatric Unit and the Geriatric Psychiatric Unit at VBH.  Except as expressly admitted, the allegations in paragraph 22 of the Complaint are denied.

23.     In response to the allegations in paragraph 23 of the Complaint, Defendants admit that Centra provides mental health services to patients at the CAPU at VBH.  Except as expressly admitted, the allegations in paragraph 23 of the Complaint are denied.

24.     Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 24 of the Complaint and, therefore, deny the same.

25.     The allegations in paragraph 25 of the Complaint are admitted.

26.     The allegations in paragraph 26 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 26 are denied to the extent they are inconsistent with or contrary to 12VAC35-105-580.  Defendants further respond that the document attached as Exhibit A speaks for itself and deny the allegations in paragraph 26 to the extent they are inconsistent with or contrary to Exhibit A.  All other allegations in paragraph 26 of the Complaint are denied.

27.     In response to the allegations in paragraph 27 of the Complaint, Defendants admit that Centra provides mental health services to child and adolescent patients at the CAPU at VBH. Except as expressly admitted, the allegations in paragraph 27 of the Complaint are denied.

28.     In response to the allegations in paragraph 28 of the Complaint, Defendants admit that Centra provides mental health services to child and adolescent patients at the CAPU at VBH. Except as expressly admitted, the allegations in paragraph 28 of the Complaint are denied.

29.     The allegations in paragraph 29 of the Complaint are denied.

30.     The allegations in paragraph 30 of the Complaint are denied.

31.     The allegations in paragraph 31 of the Complaint are denied.

32.     The allegations in paragraph 32 of the Complaint are denied.

33.     The allegations in paragraph 33 of the Complaint are denied.

34.     The allegations in paragraph 34 of the Complaint are denied.

35.     In response to the allegations in paragraph 35 of the Complaint, Defendants respond that Hartman purports to quote select excerpts from Exhibit A.  Exhibit A speaks for itself and Defendants deny the allegations in paragraph 35 to the extent they are inconsistent with or contrary to Exhibit A.  All other allegations in paragraph 35 of the Complaint are denied.

36.     The allegations in paragraph 36 of the Complaint are denied.

37.     The allegations in paragraph 37 of the Complaint are denied.

38.     The allegations in paragraph 38 of the Complaint are denied.

39.     The allegations in paragraph 39 of the Complaint are denied.

40.     The allegations in paragraph 40 of the Complaint are denied.

41.     The allegations in paragraph 41 of the Complaint are denied.

42.     In response to the allegations in paragraph 42 of the Complaint, Defendants admit only that Hartman sent the email attached as Exhibit B.   Defendants deny Hartman's mischaracterization of Exhibit B.   All other allegations in paragraph 42 of the Complaint are denied.

43.     In response to the allegations in paragraph 43 of the Complaint, Defendants admit only that screenshots of select excerpts of text messages between Hartman and East are attached as Exhibit C.  Defendants deny Hartman's mischaracterization of Exhibit C.  All other allegations in paragraph 43 of the Complaint are denied.

44.     In response to the allegations in paragraph 44 of the Complaint, Defendants admit only that a meeting was held on June 5, 2019.  Defendants deny Hartman's mischaracterization of the meeting.  All other allegations in paragraph 44 of the Complaint are denied.

45.     The allegations in paragraph 45 of the Complaint are denied.  Defendants deny Hartman's mischaracterization of Exhibit C.   All other allegations in paragraph 45 of the Complaint are denied.

46.     The allegations in paragraph 46 of the Complaint are denied.  Defendants deny Hartman's mischaracterization of the meeting.   All other allegations in paragraph 46 of the Complaint are denied.

47.     The allegations in paragraph 47 of the Complaint are denied.  Defendants deny Hartman's mischaracterization of the meeting.   All other allegations in paragraph 47 of the Complaint are denied.

48.     The allegations in paragraph 48 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.   All other allegations in paragraph 48 of the Complaint are denied.

49.     The allegations in paragraph 49 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.   All other allegations in paragraph 49 of the Complaint are denied.

50.     The allegations in paragraph 50 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.   All other allegations in paragraph 50 of the Complaint are denied.

51.     The allegations in paragraph 51 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.  All other allegations in paragraph 51 of the Complaint are denied.

52.     The allegations in paragraph 52 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.  All other allegations in paragraph 52 of the Complaint are denied.

53.     The allegations in paragraph 53 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.  All other allegations in paragraph 53 of the Complaint are denied.

54.     The allegations in paragraph 54 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.  All other allegations in paragraph 54 of the Complaint are denied.

55.     The allegations in paragraph 55 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.  All other allegations in paragraph 55 of the Complaint are denied.

56.     The allegations in paragraph 56 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.  All other allegations in paragraph 56 of the Complaint are denied.

57.     The allegations in paragraph 57 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.  All other allegations in paragraph 57 of the Complaint are denied.

58.     The allegations in paragraph 58 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.   All other allegations in paragraph 58 of the Complaint are denied.

59.     The allegations in paragraph 59 of the Complaint are denied. Defendants deny Hartman's mischaracterization of the meeting.   All other allegations in paragraph 59 of the Complaint are denied.

60.     In response to the allegations in paragraph 60 of the Complaint, Defendants respond that Exhibit D speaks for itself and deny the allegations in paragraph 60 to the extent they are inconsistent with or contrary to Exhibit D.   Defendants further respond that Centra advised Hartman that her employment was terminated by email dated June 6, 2019 at 4:58pm (Exhibit D), after Hartman refused to meet or speak with Centra's staff in person or by phone and sent over twenty aggressive and threatening emails to Centra's staff, physicians and management, making false accusations of EMTALA violations, improprieties and criminal conduct, threats to the wellbeing and livelihood of Centra's employees, and numerous attempts to extort an excessive multi-year severance package from Centra.   Hartman's actions—including, but not limited to, her attempted extortion, insubordination, harassment of co-workers, rampant misuse of a corporate credit card, improperly working split-rate shifts, and conduct unbecoming of a working professional, as well as her continued and escalating erratic and belligerent behavior after leaving Centra's premises on June 5, 2019—necessitated the termination of her employment.   All actions taken by Centra with respect to Hartman were taken in good faith, for reasonable, legitimate and non-retaliatory business reasons, and not in violation of EMTALA or any other law.

61.     In response to the allegations in paragraph 61 of the Complaint, Defendants respond that Hartman purports to quote select excerpts from Exhibit D.   Exhibit D speaks for itself and

Defendants deny the allegations in paragraph 61 to the extent they are inconsistent with or contrary to Exhibit D.  All other allegations in paragraph 61 of the Complaint are denied.

62.     The allegations in paragraph 62 of the Complaint are denied.  Defendants deny Hartman's mischaracterization of Exhibit D.   All other allegations in paragraph 62 of the Complaint are denied.

63.     The allegations in paragraph 63 of the Complaint are denied.

64.     The allegations in paragraph 64 of the Complaint are denied.

65.     The allegations in paragraph 65 of the Complaint are denied.

66.     No response is required to paragraph 66 of the Complaint because Campbell has been dismissed from this action pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).  If a response is deemed required, the allegations in paragraph 66 are denied.

67.     The allegations in paragraph 67 of the Complaint are denied.

68.     In response to the allegations in paragraph 68 of the Complaint, Defendants admit only that Hartman made accusations against Centra to the Virginia Department of Health's Office of Licensure and Certification ("OLC").  Defendants deny Hartman's mischaracterization of what she reported to the OLC or the legitimacy of her claims.  All other allegations in paragraph 68 of the Complaint are denied.

69.     The allegations in paragraph 69 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 69 are denied to the extent they are inconsistent with or contrary to OLC laws and regulations.  All other allegations in paragraph 69 of the Complaint are denied.

70.     In response to the allegations in paragraph 70 of the Complaint, Defendants admit only that the Department of Health and Human Services Centers for Medicare and Medicaid Services' ("DHHS CMMS") survey dated July 25, 2019, is attached as Exhibit E.  Defendants deny Hartman's mischaracterization of Exhibit E.  All other allegations in paragraph 70 of the Complaint are denied.

71.     The allegations in paragraph 71 of the Complaint are denied. Defendants further respond that Hartman purports to quote selected excerpts from DHHS CMMS' survey dated July 25, 2019, attached as Exhibit E.  Defendants deny Hartman's mischaracterization of Exhibit E. All other allegations in paragraph 71 of the Complaint are denied.

72.     The allegations in paragraph 72 of the Complaint are denied. Defendants deny Hartman's mischaracterization of Exhibit E.   All other allegations in paragraph 72 of the Complaint are denied.

73.     The allegations in paragraph 73 of the Complaint are denied. Defendants deny Hartman's mischaracterization of Exhibit E.   All other allegations in paragraph 73 of the Complaint are denied.

74.     The allegations in paragraph 74 of the Complaint are denied. Defendants deny Hartman's mischaracterization of Exhibit E.   All other allegations in paragraph 74 of the Complaint are denied.

75.     The allegations in paragraph 75 of the Complaint are denied.

76.     Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 76 of the Complaint and, therefore, deny the same.

77.     The allegations in paragraph 77 of the Complaint are denied.

78.     The allegations in paragraph 78 of the Complaint are denied.

79.     The allegations in paragraph 79 of the Complaint are denied.

80.     The allegations in paragraph 80 of the Complaint are denied.

81.     The allegations in paragraph 81 of the Complaint are denied.

82.     The allegations in paragraph 82 of the Complaint are denied.

83.     The allegations in paragraph 83 of the Complaint are denied.

84.     The allegations in paragraph 84 of the Complaint are denied.

85.     The allegations in paragraph 85 of the Complaint are denied.

86.     The allegations in paragraph 86 of the Complaint are denied.

87.     In response to the allegations in paragraph 87 of the Complaint, Defendants admit only that Hartman was awarded the scholarship about which she complains and therefore has no injury or damage even under her own baseless legal theory. All other allegations in paragraph 87 of the Complaint are denied.

88.     The allegations in paragraph 88 of the Complaint are denied.

89.     In response to the allegations in paragraph 89 of the Complaint, Defendants respond that Hartman purports to quote select excerpts from Exhibit F.  Exhibit F speaks for itself and Defendants deny Hartman's mischaracterization of Exhibit F.  All other allegations in paragraph 89 of the Complaint are denied. Defendants further respond that Centra is entitled to recoup from Hartman the amounts specified in Exhibit F and any other amounts that Hartman owes to Centra. As set forth in Centra's Counterclaims, Hartman has violated her contractual, fiduciary and legal duties to Centra and must reimburse and pay Centra additional amounts for, among other things, her misuse of her Centra Purchasing Card ("P-Card"), Centra credit cards and Centra charge accounts for personal purchases and personal financial gain, her misuse and disclosure of Centra's information and computer systems, and her destruction of Centra's property.

90.     In response to the allegations in paragraph 90 of the Complaint, Defendants respond that Hartman purports to quote select excerpts from Exhibit F.  Exhibit F speaks for itself and Defendants deny Hartman's mischaracterization of Exhibit F.  All other allegations in paragraph 90 of the Complaint are denied. Defendants further respond that Centra is entitled to recoup from Hartman the amounts specified in Exhibit F and any other amounts that Hartman owes to Centra. As set forth in Centra's Counterclaims, Hartman has violated her contractual, fiduciary and legal duties to Centra and must reimburse and pay Centra additional amounts for, among other things, her misuse of her Centra Purchasing Card ("P-Card"), Centra credit cards and Centra charge accounts for personal purchases and personal financial gain, her misuse and disclosure of Centra's information and computer systems, and her destruction of Centra's property.

91.     The allegations in paragraph 91 of the Complaint are denied. Defendants deny Hartman's mischaracterization of Exhibit F.  All other allegations in paragraph 91 of the Complaint are denied.

92.     The allegations in paragraph 92 of the Complaint are denied.

93.     The allegations in paragraph 93 of the Complaint are denied.

94.     Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 94 of the Complaint and, therefore, deny the same.

95.     Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 95 of the Complaint and, therefore, deny the same.

96.     The allegations in paragraph 96 of the Complaint are denied.

97.     The allegations in paragraph 97 of the Complaint are denied.

98.     The allegations in paragraph 98 of the Complaint are denied.

99.     In response to the allegations in paragraph 99 of the Complaint, Centra admits only that it provided certain qualifying employees P-Cards to be used solely for business related purchases, subject to Centra's P-Card Policy. All other allegations in paragraph 99 of the Complaint are denied.

100.     The allegations in paragraph 100 of the Complaint are denied.

101.     In response to the allegations in paragraph 101 of the Complaint, Defendants admit only that Hartman was issued a P-Card and made frequent and regular purchases on her P-Card. All other allegations in paragraph 101 of the Complaint are denied.  As set forth in Centra's Counterclaims, Hartman's misuse of the P-Card for personal purchases and personal financial gain was a breach of the P-Card Agreement and her fiduciary duties to Centra as well as conversion, fraud and unjust enrichment in violation of applicable law.

102.     In response to the allegations in paragraph 102 of the Complaint, Defendants admit only that Hartman made personal purchases on her P-Card.  All other allegations in paragraph 102 of the Complaint are denied.  As set forth in Centra's Counterclaims, Hartman's misuse of the P-Card for personal purchases and personal financial gain was a breach of the P-Card Agreement and her fiduciary duties to Centra as well as conversion, fraud and unjust enrichment in violation of applicable law.

103.     In response to the allegations in paragraph 103 of the Complaint, Defendants admit only that East repeatedly requested that Hartman provide receipts and documentation supporting her P-Card purchases and that Hartman was evasive and reluctant to provide the requested information or give East adequate time and opportunity to review.  Hartman withheld information and pressured East to approve her receipts on short notice in an attempt to conceal her misuse of the P-Card.  All other allegations in paragraph 103 of the Complaint are denied.  As set forth in

Centra's Counterclaims, Hartman's misuse of the P-Card for personal purchases and personal financial gain was a breach of the P-Card Agreement and her fiduciary duties to Centra as well as conversion, fraud and unjust enrichment in violation of applicable law.

104.    The allegations in paragraph 104 of the Complaint are denied.

105.    The allegations in paragraph 105 of the Complaint are denied.

106.    The allegations in paragraph 106 of the Complaint are denied.

107.    The allegations in paragraph 107 of the Complaint are denied.

108.    The allegations in paragraph 108 of the Complaint are denied.

109.    The allegations in paragraph 109 of the Complaint are denied.

110.    The allegations in paragraph 110 of the Complaint are denied.

111.    The allegations in paragraph 111 of the Complaint are denied.

112.    No response is required to paragraph 112 of the Complaint because Campbell and former Defendant Wes Gillespie ("Gillespie") have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

113.    No response is required to paragraph 113 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 113 of the Complaint and, therefore, deny the same.

114.    No response is required to paragraph 114 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

If a response is deemed required, Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 114 of the Complaint and, therefore, deny the same.

115.    No response is required to paragraph 115 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 115 are denied.

116.    No response is required to paragraph 116 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 116 are denied.

117.    No response is required to paragraph 117 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 117 are denied.

118.    No response is required to paragraph 118 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 118 are denied.

119.    No response is required to paragraph 119 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 119 are denied.

120.     No response is required to paragraph 120 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 120 are denied.

121.     No response is required to paragraph 121 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 121 are denied.

122.     No response is required to paragraph 122 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 122 are denied.

123.     No response is required to paragraph 123 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 123 are denied.

124.     No response is required to paragraph 124 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 124 are denied.

125.     No response is required to paragraph 125 of the Complaint because Campbell and Gillespie have been dismissed from this action and Count III has been dismissed with prejudice

pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55). If a response is deemed required, the allegations in paragraph 125 are denied.

126.    The allegations in paragraph 126 of the Complaint are denied.

127.    Defendants repeat and incorporate each of their responses to the allegations contained in the foregoing paragraphs of the Complaint as if fully set forth herein.

128.    The allegations in paragraph 128 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 128 are denied to the extent they are inconsistent with or contrary to EMTALA.

129.    The allegations in paragraph 129 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 129 are denied to the extent they are inconsistent with or contrary to EMTALA.

130.    The allegations in paragraph 130 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 130 are denied to the extent they are inconsistent with or contrary to EMTALA.

131.    The allegations in paragraph 131 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 131 are denied to the extent they are inconsistent with or contrary to EMTALA.

132.    The allegations in paragraph 132 of the Complaint are denied.

133.    The allegations in paragraph 133 of the Complaint are denied.

134.    The allegations in paragraph 134 of the Complaint are denied.

135.    The allegations in paragraph 135 of the Complaint are denied.

136.    The allegations in paragraph 136 of the Complaint are denied.

137.    The allegations in paragraph 137 of the Complaint are denied.

138.    The allegations in paragraph 138 of the Complaint are denied.

139.    The allegations in paragraph 139 of the Complaint are denied.

140.    The allegations in paragraph 140 of the Complaint are denied.

141.    The allegations in paragraph 141 of the Complaint are denied.

142.    The allegations in paragraph 142 of the Complaint are denied.

143.    The allegations in paragraph 143 of the Complaint are denied.

144.    Defendants repeat and incorporate each of their responses to the allegations contained in the foregoing paragraphs of the Complaint as if fully set forth herein.

145.    Defendants do not have sufficient information or knowledge to admit or deny the allegations in paragraph 145 of the Complaint and, therefore, deny the same.

146.    The allegations in paragraph 146 of the Complaint are denied.

147.    The allegations in paragraph 147 of the Complaint are denied.

148.    The allegations in paragraph 148 of the Complaint are denied.

149.    The allegations in paragraph 149 of the Complaint are denied.

150.    The allegations in paragraph 150 of the Complaint are denied.

151.    The allegations in paragraph 151 of the Complaint are denied.

152.    The allegations in paragraph 152 of the Complaint are denied.

153.    No response is required to paragraph 153 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

154.    No response is required to paragraph 154 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

155.    No response is required to paragraph 155 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

156.    No response is required to paragraph 156 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

157.    No response is required to paragraph 157 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

158.    No response is required to paragraph 158 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

159.    No response is required to paragraph 159 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

160.    No response is required to paragraph 160 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

161.    No response is required to paragraph 161 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

162.    No response is required to paragraph 162 of the Complaint because Count III has been dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated July 23, 2021 (ECF Nos. 54-55).

163.    Defendants repeat and incorporate each of their responses to the allegations contained in the foregoing paragraphs of the Complaint as if fully set forth herein.

164.    The allegations in paragraph 164 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 164 are denied to the extent they are inconsistent with or contrary to EMTALA.

165.    The allegations in paragraph 165 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 165 are denied to the extent they are inconsistent with or contrary to EMTALA.

166.    The allegations in paragraph 166 of the Complaint are legal conclusions to which no response is required.  If a response is deemed required, the allegations in paragraph 166 are denied to the extent they are inconsistent with or contrary to EMTALA, Virginia Code § 32.1-125.4 or other applicable federal or state law.

167.    The allegations in paragraph 167 of the Complaint are denied.

168.    The allegations in paragraph 168 of the Complaint are denied.

169.    The allegations in paragraph 169 of the Complaint are denied.

170.    The allegations in paragraph 170 of the Complaint are denied.

The allegations contained in the unnumbered "WHEREFORE" paragraph at the conclusion of the Complaint, items a-e, are denied.  (See ECF No. 17 at p. 26-27).

The jury demand at the conclusion of the Complaint requires no response.  (See ECF No. 17 at p. 27).  Defendants also demand trial by jury on any issue so triable.

## <u>DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES</u>

Without any admission as to the burden of proof, Defendants assert the following affirmative and other defenses.  Defendants expressly reserve the right to amend their Answer and/or raise additional defenses as additional information becomes available through further investigation and discovery.  Defendants also expressly reserve their right to offer all facts and evidence showing that Defendants are not liable for Hartman's claims.  As and for their affirmative and other defenses, Defendants state as follows:

1.      Hartman's Complaint fails to state a claim upon which relief can be granted.

2.      Hartman's retaliation and wrongful termination claims must be dismissed for failure to plead and/or show material adverse action and/or damages.

3.      All actions taken by Defendants with regard to Hartman were taken in good faith for non-retaliatory reasons, for reasonable and legitimate business reasons, and not in violation of any law, rule, regulation or public policy.

4.      Hartman's retaliation and wrongful termination claims should be dismissed because Centra has not engaged in retaliation because of any protected activity Hartman may have engaged in and/or Hartman cannot show that she engaged in protected activity to state a claim for retaliation.

5.      Hartman's retaliation and wrongful termination claims must be dismissed, in whole or in part, because Hartman affirmatively stated and represented to Centra that she no longer wanted to work at Centra at the time her employment with Centra ended.

6.      Hartman's retaliation claims must be dismissed because Hartman cannot show that any alleged complaint or protected activity was the but-for cause (or otherwise causally related) to any alleged adverse action.

7.     Hartman's claim and damages are precluded, in whole or in part, by her own conduct and violation of Centra's rules, policies, practices, procedures and/or legitimate business expectations.

8.     Hartman knowingly failed and refused to abide by Centra's rules, policies, practices and/or procedures by, among other things, misusing the P-Card, misappropriating Centra confidential information and property and attempting to extort Centra, and Hartman continued to do so even after Centra reiterated that doing so was against its rules, policies, practices and/or procedures known to Hartman.

9.     Hartman's retaliation and wrongful termination claims are barred, in whole or in part, because Hartman fails to allege conduct that establishes retaliatory and/or other actionable conduct by Centra under EMTALA or otherwise.

10.     Hartman's defamation claim must be dismissed because the alleged statements relied on by Hartman are true; they are not false or defamatory.

11.     Hartman's defamation claim must be dismissed because the alleged statements relied on by Hartman are opinions; they are not false or defamatory.

12.     Hartman's defamation claim must be dismissed because the alleged statements relied on by Hartman do not constitute actionable publication.  They were not published to third parties and their subject matter relates to the job function and scope of duties.  *See Shaheeen v. WellPoint Companies, Inc.*, 490 Fed. App'x 552, 555 (4th Cir. 2012) ("[The] publication element of a defamation action requires dissemination of the statement to a third party in a nonprivileged context."); *Cobb v. Rector & Visitors Univ. of Va.*, 84 F. Supp. 2d 740, 750 (W.D. Va. 2000) ("No publication occurs when the communication, which regards a matter of corporate interest, remains entirely within a corporate entity."); *Montgomery Ward & Co. v. Nance*, 165 Va. 363, 380 (1935).

13.     Hartman's defamation claim must be dismissed because the alleged statements relied on by Hartman are not defamatory and/or lack a defamatory sting, as required to state a claim.

14.     Hartman's defamation claim must be dismissed because the alleged statements relied on by Hartman are privileged. *See Larimore v. Blaylock*, 259 Va. 568, 572 (2000) (a qualified privilege exists in the context of employment relationships and applies to statements "made between co-employees and employers in the course of employee or discharge matters").

15.     Hartman's defamation claim must be dismissed because Defendants' alleged statements were not made with actual malice.  There can be no malice as a matter of law, and therefore no action for defamation.  *See Larimore*, 259 Va. at 572 (recognizing that "employment matters are occasions of privilege in which the absence of malice is presumed"); *Tomlin v. IBM Corp.*, 84 Va. Cir. 280, 288 (Fairfax Co. 2012) (citing *Jarrett v. Goldman*, 67 Va. Cir. 361 (Portsmouth 2005)); *Union of Needletrades v. Jones*, 268 Va. 512, 520 (2004) (quoting *Gazette, Inc. v. Harris*, 229 Va. 1, 18 (1985) (In the "[employment] context, 'actual malice' is 'behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made.'").

16.     Hartman's Complaint fails to state a claim for defamation because Defendants are immune from civil liability under Virginia's Anti-SLAPP statute, Va. Code § 8.01-223.2, and any applicable amendments thereto.

17.     Defendants' alleged statements cannot form the basis of any claim for relief or otherwise support any claim for relief by Hartman against Defendants because such statements are not actionable as a matter of law, are privileged and are judicially immune from supporting a claim for defamation.

18.     Hartman's claims and damages are precluded, in whole or in part, by Hartman's violation of Centra policies, practices and/or procedures, and/or applicable laws and regulations.

19.     Hartman's claims are barred, in whole or in part, by the doctrine of unclean hands, laches, and/or waiver.

20.     Hartman's claims are barred, in whole or in part, because she is estopped as to such claims by her own actions.

21.     Hartman's claims are unavailable, in whole or in part, because there was no causal connection between Centra's challenged conduct and any damages which she allegedly suffered.

22.     Hartman is barred, in whole or in part, from seeking relief from Defendants because the alleged losses set forth in Hartman's Complaint did not result from anything Defendants allegedly did or allegedly failed to do.

23.     Hartman is barred, estopped, otherwise has waived or is precluded from seeking damages or other relief against Defendants pursuant to the after-acquired evidence doctrine and/or her misusing the P-Card, misappropriating Centra confidential information and property and attempting to extort Centra.

24.     Hartman's claims and/or damages are barred, in whole or in part, for her failure to mitigate.

25.     Any monetary relief Hartman seeks, or might otherwise be entitled to receive, must be reduced by the amounts Hartman earned, or with reasonable diligence could have earned through mitigation, or which she otherwise failed to seek or accept, during or covering the period for which she seeks monetary relief.

26.     Any monetary relief Hartman seeks, or might otherwise be entitled to receive, must be offset by all amounts Hartman owes to Centra pursuant to Centra's Counterclaims.

27.     Hartman's claims are barred, in whole or in part, by her failure to adhere to the applicable statute of limitations, required time period for asserting claims, and/or other statutory or other provisions of law.

28.     Defendants call upon Hartman for strict proof of each and every element of her claims and damages alleged in the Complaint.

29.     Hartman cannot establish facts that would support the imposition of punitive damages against Defendants and the imposition of any such damages would violate the constitutional and/or other rights of Defendants.

30.     All actions taken with regard to Hartman were taken in good faith, for reasonable and legitimate business reasons, and not in violation of any law, rule, or regulation.

31.     Defendants reserve the right to assert any other defense that comes to light during the discovery of this action and to amend this Answer upon the discovery of a factual basis for any such defense.

32.     Defendants reserve all defenses under Rule 8(c) of the Federal Rules of Civil Procedure and any other defenses, at law or in equity, which may now exist or in the future be available based on investigation or discovery.

WHEREFORE, Defendants, by counsel, have fully answered and set forth their affirmative and other defenses and respectfully move the Court to enter final judgment in their favor, to dismiss this action from the Court's docket, to award Defendants their attorneys' fees, costs and expenses, and to grant Defendants such further and other relief as the Court deems proper.

### Rule 38(b)(1) Jury Demand

Pursuant to Rule 38(b)(1), Defendants demand trial by jury on any and all issues so triable.

## CENTRA'S COUNTERCLAIMS

Counterclaimant Centra Health, Inc. ("Centra"), by counsel, submits these Counterclaims against Counterclaim Defendant Kimberly Hartman ("Hartman") as follows:

## PARTIES

1.    Centra is a regional nonprofit health care system based in Lynchburg, Virginia.

2.    Hartman is a former employee of Centra and a resident of Lynchburg, Virginia.

## BACKGROUND

3.    After receiving a call on its compliance hotline on May 20, 2019, reporting that Hartman was improperly working split rate shifts (working hourly shifts as a frontline nurse during the same hours as her salaried unit manager role to receive double pay in violation of Centra's time and attendance policies), Centra investigated and learned that Hartman was not only improperly working split rate shifts but also misusing her Centra Purchasing Card ("P-Card") and Centra's credit cards and charge accounts for personal purchases and misappropriating Centra's funds in violation of Centra's policies, her contractual and fiduciary duties to Centra, and applicable law.

4.    Upon learning of Centra's pending investigation on May 28, 2019, Hartman freaked out because she knew she was guilty and would be caught red handed stealing from Centra and engaging in other unlawful activities.

5.    Hartman devised an exit strategy to try to get a pay day from Centra before her embezzlement scheme unraveled:  she accused Centra of trumped up EMTALA violations in an attempt to (a) extort Centra for millions of dollars or, if unsuccessful, (b) set up a false employment retaliation claim.

6.    When Centra refused to succumb to her extortion demands examples of which are attached hereto as **Exhibits 1-2**, Hartman pursued Plan B and filed this lawsuit.

7.     There is no question that Centra's investigation prompted Hartman's purported EMTALA concerns – not the other way around.  As she concedes, Hartman did not "discover" the alleged EMTALA violations until June 1, 2019, and did not "report" them to Centra until June 2, 2019:  4-5 days **after** learning of the investigation on May 28, 2019.  Complaint at ¶¶ 30-44.

8.     This lawsuit is a sham and no different from the other unsuccessful get rich schemes that Hartman has a pattern and practice of pursuing against employers, landlords and other innocent third parties in this same Court examples of which are attached hereto as **Exhibits 3-4**. As **Exhibit 3** confirms, on August 7, 2015, while employed with Centra, Hartman sued her former employer Carilion Clinic ("Carilion") making false accusations of employment discrimination, claiming that she was not wrongfully denied a promotion due to her daughter's autism, and seeking "$500,000 in punitive and compensatory damages."  The Carilion lawsuit was dismissed with prejudice.   As **Exhibit 4** confirms, on January 1, 2018, while employed with Centra and after defaulting on a seller financed note, Hartman sued a retired 71 year old woman, Bonnie Dellinger ("Dellinger"), claiming bogus Frank Dodd-Act violations and seeking "$100,00 total ($26,500 is forgiveness of mortgage)."  The Dellinger lawsuit was likewise dismissed.

9.     Hartman's motive for embezzling and when caught attempting to extort Centra is likewise clear:  financial distress.  Hartman has a long history of financial insolvency and bankruptcies examples of which are attached hereto as **Exhibits 5-6**.  As **Exhibit 5** confirms, on July 29, 2014, while employed with Centra, Hartman filed bankruptcy and the case was dismissed for failure to make plan payments and closed on January 15, 2016.  As **Exhibit 6** confirms, on February 25, 2016, while employed with Centra, Hartman again filed bankruptcy and the case was dismissed and closed on July 14, 2016.  Hartman spend much of her employment with Centra in bankruptcy and needed to satisfy ongoing financial obligations.  Stealing was her solution.

10.     Given her pattern and practice of attempting to shakedown her former employers and lenders and other innocent third parties through frivolous litigation (See **Exhibits 3-4**) and her history of financial distress and bankruptcies (See **Exhibits 5-6**), Hartman's embezzlement and attempted extortion of Centra is unfortunately simply par for course.

11.     After learning that she was under investigation from Centra (and realizing she would be caught stealing because she was guilty) on May 28, 2019, Hartman implemented her exit strategy beginning on June 1-2, 2019.  Hartman accused Centra of trumped up EMTALA violations in an attempt (a) to extort Centra for millions of dollars (see **Exhibits 1-2**) or, if unsuccessful, (b) set up a false employment retaliation claim.

12.      As **Exhibits 1-2** confirm, Hartman (a) demanded "3 years of pay up front," threatened "Joint Commission pulling accreditation" and "closing the doors at Centra" and claimed that, if Centra did not pay her exorbitant severance package, her "national level" law firm will extract multi-millions or billions of dollars from Centra just as it has done in other cases.  When that failed, Hartman (b) filed this lawsuit pursuing a false employment retaliation claim.

### JURISDICTION AND VENUE

13.     This Court has supplemental jurisdiction over these Counterclaims under 28 U.S.C. § 1367 because the claims set forth herein are so related to claims set forth in Hartman's Complaint that they form part of the same case or controversy under Article III of the United States Constitution, and such jurisdiction is not inconsistent with the jurisdictional requirements of 28 U.S.C. § 1332.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because:  (1) Hartman resides in this District; and (2) a substantial part of the events giving rise to the claims occurred in this District.

## NATURE OF THE ACTION

15.     This action arises out of: (a) Hartman's breaches of her Centra P-Card Agreement (the "P-Card Agreement") (Count 1); (b) Hartman's breaches of her Centra Health Confidentiality and Acceptable Computer Use User Agreement (the "Confidentiality Agreement") (Count 2); (c) Hartman's breaches of her fiduciary duties of loyalty and confidentiality owed to Centra as an employee of Centra (Count 3); (d) Hartman's conversion (Count 4); (e) Hartman's fraud (Count 5); and (f) Hartman's unjust enrichment (Count 6).

16.     Centra seeks monetary damages from Hartman to compensate for injury to Centra arising from Hartman's breaches of contract (Counts 1-2), breaches of fiduciary duties (Count 3), conversion (Count 4), fraud (Count 5), and unjust enrichment (Count 6).   In addition to compensatory damages (Counts 1-6), Centra also seeks from Hartman punitive damages (Counts 3-5) and disgorgement of wrongful gains (Counts 3-6).

## FACTUAL ALLEGATIONS

### Centra Hires Hartman

17.     On or about July 1, 2014, Centra hired and employed Hartman.

### Hartman enters into P-Card Agreement & Confidentiality Agreement with Centra

18.     In connection with her employment with Centra, Hartman entered into her P-Card Agreement and Confidentiality Agreement with Centra.

19.     Effective October 14, 2014, Hartman entered into her P-Card Agreement with Centra attached hereto as **Exhibit 7**.   The P-Card Agreement provides that "the P-Card is for business related purchases only," that Hartman's "improper use of the P-Card may be considered misappropriation of Centra funds," and that Hartman "must comply with Centra's P-Card Policy." A copy of Centra's P-Card Policy is attached hereto as **Exhibit 8**.

20.     As set forth below, Hartman breached her P-Card Agreement by, among other things, using her P-Card for personal purchases, otherwise improperly using her P-Card for personal financial gain, and failing to comply with Centra's P-Card Policy.

21.     Effective July 6, 2014, Hartman entered into her Confidentiality Agreement with Centra attached hereto as **Exhibit 9**.  The Confidentiality Agreement provides that Hartman must maintain the confidentiality of Centra information and refrain from inappropriate use of Centra's information or computer systems.   Specifically, the Confidentiality Agreement provides that Centra's information "is confidential" and "is to be accessed only on a need to know basis" when "essential for performance of work responsibilities at Centra," that "along with confidentiality of information, acceptable use of computer systems is necessary to protect Centra Health employees, patients and the company from illegal and damaging activity," and that any violation "may lead to disciplinary or legal action."

22.     On numerous occasions during her employment with Centra, Hartman acknowledged her review of and reaffirmed her commitment to comply with her Confidentiality Agreement, including on February 19, 2018 and April 1, 2019.  Copies of Hartman's signed acknowledgements of her Confidentiality Agreement are attached hereto as **Exhibit 10**.

23.     As set forth below, Hartman breached her Confidentiality Agreement by, among other things, failing to maintain the confidentiality of Centra information or refrain from inappropriate use of Centra's information or computer systems, misusing and improperly disclosing Centra's confidential information and inappropriately accessing and using Centra's computer systems.

24.     As an employee of Centra, Hartman was responsible for, among other things, protecting Centra's information, property and computer systems.

25.     Over the course of her employment with Centra, Centra trained Hartman and entrusted her with a Centra P-Card and Centra information, property and computer systems.

**Hartman Engages in Unlawful Activities While Employed With Centra**

26.     Unbeknownst to Centra, Hartman while employed with Centra was not only improperly working split rate shifts (working hourly shifts as a frontline nurse during the same hours as her salaried unit manager role to receive double pay in violation of Centra's time and attendance policies), but also misusing her P-Card and Centra's credit cards and charge accounts for personal purchases and misappropriating Centra's funds in violation of Centra's policies, her contractual and fiduciary duties to Centra, and applicable law.

**Centra's Compliance Department Receives Hotline Call About Hartman and Investigates**

27.     On May 20, 2019, Centra's Compliance Department received a call on its Compliance Hotline (the "Hotline Call") alleging that Hartman was improperly working split rate shifts and receiving double pay in violation of Centra's time and attendance policies.

28.     While investigating this Hotline Call, Centra's Compliance Department discovered that Hartman had ongoing payroll deductions for bankruptcy, multiple retirement plan loans, and large payroll deductions for purchases at the Virginia Baptist Hospital Gift Shop.

29.     While Investigating this Hotline Call, Centra's Compliance Department also discovered that Hartman had been placed on a Performance Improvement Plan ("PIP") by her supervisor Defendant Stephanie East ("East") for, among other things, spending significantly more on discretionary items using her P-Card than other unit managers.

30.     Upon review of Hartman's P-Card account, Centra's Compliance Department confirmed at least $7,590.47 in purchases since January 1, 2018 by Hartman that were in violation of Centra's P-Card Policy, including cell phones, furniture, office supplies, multiple gift cards and

two (2) sets of washer/dryer machines. In addition, Centra's Compliance Department identified personal purchases by Hartman in violation of Centra's P-Card Policy, including gas for her personal vehicle, food, text books, a gaming system and controller (which were delivered to her personal residence), and train tickets for a personal trip to New York

31.     Through its investigation, Centra learned that Hartman was not only improperly working split rate shifts but also misusing her P-Card and Centra's credit cards and charge accounts for personal purchases and misappropriating Centra's funds in violation of Centra's policies, her contractual and fiduciary duties to Centra, and applicable law.

**Hartman Learns About Investigation and Flips Out**

32.     On May 28, 2019, East reached out to Hartman and explained that Centra's Corporate Compliance was doing a review and had a question about one of Hartman's timecard entries.  East asked Hartman for clarification around the date provided on the timecard and Hartman claimed to be looking into it.

33.     When East reached out to Hartman regarding this Hotline Call, Hartman immediately became upset and claimed to be under financial pressure.

34.     Hartman texted East shortly thereafter and requested to meet right then. Hartman and Centra's Adult Psychiatry Unit Manager Jake Cash ("Cash") came to East's office (they had just gotten out of a meeting) and Hartman proceeded to rant and rave about no one appreciates her efforts, that if she didn't pick up shifts the unit would work short and other false grievances. Hartman claimed she was going to go upstairs and type up her resignation.  East tried to assure Hartman that this was a hotline call, and there had not been a formal investigation, and all she needed to do was cooperate and answer questions.  Hartman left the office in a huff and reached out to Centra's Human Resources Department ("HR").

35.     On May 30, 2019, East again met with Hartman. During this meeting, Hartman again was overly defensive, listed false grievances, and offered a litany of excuses and failed to accept responsibility for improperly working split rate shifts, soliciting contributions from her subordinates directly on a Go Fund me page for her daughter's medical bills, her chronic overspending on units, and repeated violations of Centra's policies. Hartman also expressed her desire to be promoted and make more money and had turned down another offer of employment recently.

### Hartman Implements her "Shoot First" Scheme

36.     Upon learning of Centra's pending investigation on May 28, 2019, Hartman freaked out because she knew she was guilty and would be caught red handed stealing from Centra and engaging in other unlawful activities.

37.     Hartman devised an exit strategy to try to get a pay day from Centra before her embezzlement scheme unraveled:  she accused Centra of trumped up EMTALA violations in an attempt to (a) extort Centra for millions of dollars or, if unsuccessful, (b) set up a false employment retaliation claim.

38.     When Centra refused to succumb to her extortion demands Hartman pursued Plan B and filed this lawsuit.

39.     Ironically, it was Hartman who retaliated against Centra for having the audacity to ask questions and request that she comply with her P-Card Agreement and Centra's policies.

40.     Assuming (as any guilty person would) that Centra would soon discover the depth of her unlawful activities, Hartman implemented her "shoot first" scheme.  She hoped to be out the door with Centra's money in hand before Centra detected the full extent of her theft and embezzlement.  Her scheme was half-successful:  she left first but without the money.

**Hartman Accuses Centra of Trumped Up EMTALA Violations as Part of Her Scheme**

41.     There is no question that Centra's investigation prompted Hartman's purported EMTALA concerns – not the other way around.  As she concedes, Hartman did not "discover" the alleged EMTALA violations until June 1, 2019, and did not "report" them to Centra until June 2, 2019:  4-5 days **after** learning of the investigation on May 28, 2019.  Complaint at ¶¶ 30-44.

42.     All as part of her orchestrated scheme, Hartman had an epic meltdown.  Hartman acted belligerently and insubordinately, picked fights with her supervisor East and Centra Psychiatrist Dr. Michael Judd ("Dr. Judd") who were attempting to address her alleged EMTALA concerns, made wild accusations against co-workers, sent over 20 harassing emails to Centra's management in an unsuccessful attempt to extort Centra for millions of dollars, and, when that was unsuccessful, ultimately filed this lawsuit asserting a false employment retaliation claim.

43.     On June 2, 2019, Hartman sent an email to East, Dr. Judd and other Centra employees reporting her purported EMTALA concerns and requested a meeting to discuss them.

44.     On June 5, 2019, East and Dr. Judd met with Hartman to discuss her purported EMTALA concerns.  During this meeting, East, Dr. Judd and Hartman discussed adolescent admission/exclusion criteria, found opportunities for improvement and devised a plan to assemble the physicians, review the criteria and incorporate Hartman's suggestions.  East and Dr. Judd then advised Hartman that, while they appreciated her suggestions, sending inflammatory emails and calling out mental health leaders via email was not the best way to raise or resolve issues. Hartman became very upset, yelled, screamed and made aggressive accusations and threats against East and Dr. Judd. When Hartman continued her aggressive and threatening behavior, East and Dr. Judd left the room.  Thereafter, Hartman stormed off and sent East, Dr. Judd and other Centra employees numerous aggressive and threatening communications via email, text message and social media.

45.     On the evening of June 5, 2019, and throughout the day of June 6, 2019, Hartman doubled down on her belligerence and insubordination and repeatedly attempted to extort Centra for millions of dollars and made baseless threats against Centra of criminal conduct and shutting down the hospital all in hopes of enriching herself and extracting a substantial severance payment from Centra.

46.     Specifically, by email to East and Centra's HR Business Partner Sylvia Moore ("Moore") dated June 5, 2019 at 9:05pm, Hartman falsely claimed retaliation.

47.     By email to Moore, Centra's Director of Human Resources Shannon Meadows ("Meadows"), Centra's HR Business Partners Chris Thompson ("Thompson") and Karen Ackerman ("Ackerman") and Centra's President and CEO Andy Mueller ("Mueller") dated June 6, 2019 at 7:30am, Hartman reiterated her false claims of retaliation, accused Centra of EMTALA violations and requested an exorbitant severance package. Hartman claimed that if Centra would pay her off she would keep quiet and allow Centra "to handle these unacceptable violations internally." Hartman threatened that "There are a lot of good people at Centra" and she "would prefer they don't get affected by the report of these EMTALA violations, bed hiding, and unethical behaviors."

48.     By emails to Moore, Meadows, Thompson, Ackerman and Mueller copying Dr. Judd and Centra's Senior Vice President Michael Elliott ("Elliot") dated June 6, 2019 at 8:32 am, 12:03pm, 12:11pm, 12:44pm, 2:10pm and 2:14pm,, Hartman falsely accused Centra of "illegal and multiple EMTALA violations" and unethical, illegal practice and EMTALA violations" and claimed to be "truly shocked we have not been shut down yet."

49.     By email to Meadows dated June 6, 2019 at 2:30pm, Hartman demanded that Centra "have a severance package ready with the details."

50.     By email to Meadows dated June 6, 2019 at 3:51pm, Hartman reiterated that unless Centra provided her "a fair severance package" by 5pm that same day, she would "proceed with the many EMTALA violations and unethical behaviors" and "notify the EEOC, CMS, Joint Commission, DBDHS, Autism advocates, Creigh Deeds, and the attorney of these violations."

51.     All of this occurred before and clearly justified and necessitated the termination of Hartman's employment with Centra.  Hartman's string of text messages, emails, verbal threats on social media, and her erratic behavior toward East and other Centra employees required Centra to request security presence. As a result of Hartman's actions, Centra's employees reported to East not feeling safe on Centra's property.

**Hartman Forces Centra to Terminate Her Employment All As Part of Her Scheme**

52.     On the evening of June 5, 2019 and throughout the day on June 6, 2019, Hartman refused to meet in person or speak by phone with Meadows or any other Centra employees.

53.     By email dated June 6, 2019 at 4:58 pm, Meadows advised Hartman that her employment with Centra was terminated.

54.     Centra made the decision to terminate Hartman's employment in the late afternoon on June 6, 2021, after Hartman had:  (a) refused to meet or speak with Centra's staff in person or by phone and (b) sent over twenty aggressive and threatening emails to Centra's staff, physicians and management making false accusations of EMTALA violations, improprieties and criminal conduct, threats to the wellbeing and livelihood of Centra's employees, and numerous attempts to extort an excessive multi-year severance package from Centra.

55.     Hartman's actions—including, but not limited to, her attempted extortion, insubordination, harassment of co-workers, rampant misuse of a corporate credit card, improperly working split-rate shifts, and conduct unbecoming of a working professional, as well as her continued and escalating erratic and belligerent behavior after leaving Centra's premises on June

5, 2019—necessitated the termination of her employment.  All actions taken by Centra with respect to Hartman were taken in good faith, for reasonable, legitimate and non-retaliatory business reasons, and not in violation of EMTALA or any other law.

### Hartman Engages in More Unlawful Activities After Her Employment

### Hartman Destroys Centra's IPhone and its Contents

56.     Following the termination of her employment with Centra on June 6, 2019, Hartman microwaved and destroyed her company issued IPhone and its contents, misappropriated and refused to return her company issues laptop and its contents, continued to repeatedly threaten and harass Centra's employees via email, text message and social media, continued to attempt to extort Centra by making baseless threats of criminal conduct in hopes of enriching herself, and engaged in efforts to conceal and cover up these and other actions in which she engaged during and after her employment with Centra.  A picture of the destroyed and microwaved IPhone is attached hereto as **Exhibit 11**.

57.     By follow up letter dated June 12, 2019, Meadows advised Hartman that she owed monies to Centra based on her violations of Centra's policy for her unapproved purchases and other misconduct, including her microwaving and destruction of her company issued IPhone and its contents, her misappropriation and refusal to return her company issues laptop and its contents, and her misuse of her P-Card to purchase rail tickets, unapproved lunches, gift cards and pay for her personal malpractice insurance for nurse practitioner school.

58.     On the pay cycle immediately following the termination of her employment on June 6, 2019, Centra deducted funds from Hartman's check as reimbursement for the personal purchases that had been identified at that time, and reimbursement for a company issued cell phone that Hartman destroyed (by microwave) before returning.

**Centra Discovers Additional Misuse of P-Card, Credit Cards & Charge Accounts**

59.     Since the termination of Hartman's employment on June 6, 2019, additional personal purchases by Hartman have been identified. Centra has become aware of Hartman's pattern and practice of using Centra's corporate Office Depot account to purchase personal items. Centra's Compliance Department has identified at least $2,825.02 of items purchased by Hartman that cannot be located, several which appear to have been sold through Facebook Yard Sale groups. Hartman also charged additional amounts to her P-Card and returned the purchased items to retailers for shopping cards or store credit

60.     Centra also has become aware of Hartman's practice of using Centra's corporate Office Depot account to purchase personal items such as a video projector and screen (neither of which are allowed to be purchased from Office Depot pursuant to Centra policy), and Centra received confirmation from Office Depot's Fraud Department that Hartman attempted to use the account to purchase among other items, two (2) Apple iMac All-in-One Computers (also against Centra policy).

61.     Centra also has become aware that Hartman purchased a membership to Sam's Club using her Centra P-Card, with her husband, Jason, as the complimentary additional member. On a visit to Sam's club on July 12, 2019, Sam's Club management allowed Centra to view a report of select member purchases.   Returns of goods were noted where the original charge was on Hartman's P-Card, however the return did not appear as a credit on the P-Card statement.  Sam's Club management indicated that returns could be issued for (1) a credit to the card originally charged, (2) a shopping card, or (3) cash if the original card was a debit card.  Some of the purchases on the Sam's Club statements that were viewed could not be traced to Hartman's P-Card statement, which confirms that Hartman used the account for personal purchases.  On at least one occasion, items were purchased with the P-Card and returned the same day, with no credit for the

return on the P-Card statement.  A receipt was located with Hartman's expense reports reflecting that these same items were returned six minutes after the purchase and funds credited to a shopping card, not credited to the P-Card.

62.     A purchase made shortly before Hartman's termination, on which the receipt was marked as a return of merchandise (the receipt also included fees for her Sam's Club membership renewal), had no corresponding credit for the returned goods on the P-Card statement.  Sam's Club purchases on Hartman's P-Card also included items in violation of Centra policy as well as items for personal use.

63.     When reviewing Walmart expense reports, Centra noted a receipt submitted from Hartman reflecting the method of payment included both her P-Card ($73.87) and a shopping card ($200.05).  The odd amount of the shopping card suggests that the balance was funded by returns for store credit.  Many of the items on the receipt would not be appropriate for Hartman's unit, potatoes, sirloin, lasagna, various frozen dinners, spaghetti, eggs, etc.

64.     On November 26, 2018, Hartman purchased $450 of gift cards from Walmart, two (2) for $100 and five (5) for $50 and noted that they were for "recognition gifts for CQC's and Cerner superusers".  On December 7, 2018, one gift card was used as partial payment for goods at Walmart, and the balance was charged to a non-Centra credit card.  No request for reimbursement was noted for the items charged to the non-Centra credit card.  The gift card was not used for the stated purpose on the receipt at time of purchase, and the purchase of gift cards is against Centra policy.  Walmart purchases on Hartman's P-Card also included items in violation of Centra policy as well as items for personal use.

65.     Hartman utilized an Amazon Prime membership paid for with her P-Card.  After her termination, Compliance obtained control of the company purchased Amazon Prime account.

On April 26, 2019, while on a family vacation, Hartman attempted to purchase $800 of gift cards for personal use.  Due to the delay in receiving the cards, and after email correspondence with Amazon, Hartman cancelled the transactions and Amazon issued Hartman a $50 gift card for any "inconvenience".  On another occasion, Hartman's husband attempted a purchase of a single $400 Amazon gift card which was also cancelled.  Amazon purchases on Hartman's P-Card also included items in violation of Centra policy as well as items for personal use, some of which were shipped to her home.

66.     Authorized users can purchase office supplies through Centra's Office Depot Business Solutions account.  Hartman's used Centra's corporate Office Depot account to purchase items which were in violation of Centra policy.  Centra visited Hartman's former unit to locate some of the questionable items.  Several items, totaling $2,825.02, were not located on the ward.  Centra was notified that Hartman listed three items for sale on various Facebook online yard sale groups, that matched items that she ordered through Office Depot and could not be located on her unit.  These items are a Samsung Galaxy S8+, Mophie juice pack case, and wireless charging pad.  Centra also noted that at least three (3) devices ordered from Office Depot, an Amazon Fire TV stick and two (2) Amazon Echo Dots are identified as devices linked to Hartman's Centra purchased Amazon Prime account, and those devices remain active and in use after her termination.

67.     Additionally, Centra received confirmation from Office Depot's Fraud Department that Hartman attempted to use the account to purchase several high value items that Office Depot cancelled due to suspected fraud.  The cancelled purchases include a portable projection screen, a projector, two-way radios, and two Apple iMac All-in-One Computers among other items, against Centra policy.  The value of the cancelled order was $3,958.35.  At least one of the orders cancelled

by Office Depot was for an item previously ordered and shipped a BenQ TK800 3D ready projector. Office Depot purchases on Hartman's P-Card also included items in violation of Centra policy as well as items for personal use.

68.     Hartman accessed a Netflix subscription charged to her P-Card after her termination, until such time as Centra was able to cancel the subscription. Hartman also continues to use a Hulu subscription charged to her P-Card. The memberships were intended for patients in her unit.

69.     Hartman purchased items with her P-Card or through Centra's Office Depot account which were for personal use, were shipped to her home, or were identified as requiring reimbursement, and for which reimbursement was never received. Centra deducted a total of $1,075.81 from Hartman's last paycheck, as reimbursement for the unreimbursed expenses that had been identified at that time. These included the remaining $51.97 of what appears to be personal malpractice insurance premiums charged to her P-Card (in violation of Centra policy), $250 for train tickets for personal trip charged to her P-Card (in violation of Centra policy), a $50 gift card for a resident therapist that had been previously identified as reimbursable by Hartman (in violation of Centra policy), $123.84 for a nurses week lunch previously identified as reimbursable by Hartman, and $600 for a company issued cell phone that Hartman microwaved before returning.

70.     Centra has identified $2,825.02 of items purchased by Hartman that cannot be located, several of which she appears to have sold through Facebook yard sale groups. Another $1,043.59 of unreimbursed personal items paid for by Centra have been identified. Additionally, an unknown amount was charged by Hartman to her Centra issued P-Card and returned to retailers for shopping cards or store credit.

**Hartman Misappropriates Centra Information and 2 Centra Laptops**

71.     When she left Centra on June 5, 2019, Hartman took two laptops:  her Centra issued Lenovo laptop (the "Lenovo Laptop") and a Dell laptop belonging to a Centra physician who worked on her unit (the "Physician Dell Laptop").

72.     On June 6, 2019, Hartman copied 82 Centra files from the Lenovo Laptop onto her USB flash drive (the "USB").  The metadata of the files on the USB match precisely the files on the Lenovo Laptop from which they were copied.  There are 82 files from the Lenovo Laptop copied to the USB Flash Drive on June 6, 2019, all of the files with metadata indicating Hartman as the author of the copies to USB.

73.     Hartman acknowledges unauthorized possession of these files on June 6, 2019 in several email communications with Centra when she attempted to extort Centra for millions of dollars pursuant to her scheme.

74.     Hartman kept in her possession not only the Lenovo Laptop, but also the USB and the Physician Dell Laptop, none of which belonged to her and all of which contained Centra information.

75.     Hartman's possession, improper access and use of the Lenovo Laptop and the Physician Dell Laptop, her copying of the 82 Centra files from the Lenovo Laptop to the USB, and her possession and use and disclosure of these files constitute breaches of the Confidentiality Agreement and Hartman's fiduciary duties to Centra as well as conversion and unjust enrichment.

**Hartman Lies and Deceives VHF into Awarding Her Scholarship then Sues Centra & East**

76.     In early June 2019, East received a call from Denise Konrad ("Konrad") with the Virginia Healthcare Foundation ("VHF") inquiring about Hartman's employment status.

77.     On June 10, 2019, East emailed back Konrad stating that Hartman was no longer employed with Centra.   Thereafter, East received a voicemail from Konrad making another inquiry.

78.     On or about June 18, 2019, East called Konrad back and let her know that Hartman's employment with Centra had been terminated.

79.     On June 20, 2019, Konrad emailed East stating thanks for letting her know and asking whether East knew if Hartman was employed elsewhere.

80.     On June 27, 2019, Konrad emailed East to advise that Hartman was claiming to have resigned from Centra because her position required more hours than she could work while pursuing her degree. During a follow up phone call with East, Konrad expressed concern about Hartman's dishonesty.   Konrad advised that Hartman not only lied about resigning from Centra, but also made dubious claims that her school Shenandoah University had advised her to quit her job (which is something schools never say) and that her husband had just got a job as a paramedic (even though he is listed as disabled on her application).

81.     Hartman lied about resigning from Centra to Konrad in an attempt to obtain a scholarship.

82.     Despite her deception and deceit, Hartman was awarded a scholarship from the VHF, but nonetheless saw fit to sue East and Centra for defamation based on true statements that did not even prevent her from receiving a scholarship or otherwise cause any negative impact.

**Hartman's Actions Have Caused Great Harm To Centra**

83.     Hartman's actions described above were in breach of her P-Card Agreement and her Confidentiality Agreement and her fiduciary duties and in violation of applicable law.

84.     Hartman has violated employee duties established by Centra, including, but not limited to, those duties set forth in her P-Card Agreement and her Confidentiality Agreement,  all of which were known to and understood by Hartman.

85.     Hartman has injured Centra by, among other things, misusing her P-Card, misappropriating Centra information and property, and harassing, threatening and attempting to extort Centra for millions of dollars.

86.     By engaging in this and similar conduct, Hartman has breached her P-Card Agreement (Count 1) and Confidentiality Agreement (Count 2) and her fiduciary duties of loyalty and confidentiality to Centra (Count 3), converted Centra's property (Count 4), defrauded Centra (Count 5) and unjustly enriched herself (Count 6).

**COUNT 1:**
**BREACH OF CONTRACT**
**(P-Card Agreement)**

87.     Centra repeats and realleges the allegations in all of the preceding paragraphs of the Complaint, as though fully set forth herein.

88.     Hartman's P-Card Agreement (**Exhibit 7**) is a valid, binding and enforceable contract.

89.     Centra performed and met its obligations under Hartman's P-Card Agreement.

90.     Hartman breached her obligations under her P-Card Agreement by using her P-Card for personal purchases, otherwise improperly using her P-Card for personal financial gain, and failing to comply with Centra's P-Card Policy.

91.     Hartman's material breach of her P-Card Agreement has proximately caused Centra to suffer damages, and Centra is entitled to recover these damages under Hartman's P-Card Agreement in an amount to be proven at trial.

## COUNT 2:
## BREACH OF CONTRACT
### (Confidentiality Agreement)

92.     Centra repeats and realleges the allegations in all of the preceding paragraphs of the

Complaint, as though fully set forth herein.

93.     Hartman's Confidentiality Agreement (**Exhibit 9**) is a valid, binding and

enforceable contract.

94.     Centra  performed and met its obligations under Hartman's Confidentiality

Agreement.

95.     Hartman breached her obligations under her Confidentiality Agreement by failing

to maintain the confidentiality of Centra information or refrain from inappropriate use of Centra's

information or computer systems, misusing and improperly disclosing Centra's confidential

information and inappropriately accessing and using Centra's computer systems.

96.     Hartman's material breach of her Confidentiality Agreement has proximately

caused Centra to suffer damages, and Centra is entitled to recover these damages under Hartman's

Confidentiality Agreement in an amount to be proven at trial.

## COUNT 3:
## BREACH OF FIDUCIARY DUTIES

97.     Centra repeats and realleges the allegations in all of the preceding paragraphs of the

Complaint, as though fully set forth herein.

98.     While employed by Centra, Hartman has been entrusted with and allowed access

to a Centra P-Card and Centra information, property and computer systems.

99.     As an employee of Centra, Hartman owes fiduciary duties of loyalty and

confidentiality to Centra.  Such duties encompass obligations:  (1) not to use or disclose Centra

information; (2) not to misappropriate such information to her own or another's purposes; (3) not

to divert corporate opportunities, funds or property from Centra; and (4) not to engage in conduct that caused harm to Centra.

100.    Hartman has breached these fiduciary duties by: (1) retaining, disclosing and/or utilizing Centra information; (2) improperly accessing Centra computer systems; (3) destroying Centra property; (4) misusing the P-Card and Centra's credits cards and charge accounts; and (5) misappropriating funds and property from Centra.

101.    This conduct of Hartman  proximately has caused Centra to suffer damages.

102.    Centra has suffered and seeks direct and consequential damages as a result of Hartman's breaches of her fiduciary duties to Centra, and is entitled to recover these actual damages from Hartman in an amount to be proven at trial.

103.    Hartman's actions were taken willfully and wantonly, maliciously, intentionally, and in bad faith.

104.    As a result, Centra is entitled to recover punitive damages for Hartman's wrongful conduct.

<u>**COUNT 4:**</u>
<u>**CONVERSION**</u>

105.    Centra repeats and realleges the allegations in all of the preceding paragraphs of the Complaint, as though fully set forth herein.

106.    Hartman misappropriated and converted Centra's funds through misuse of the P-Card and Centra's credit cards and charge accounts.

107.    Hartman also misappropriated Centra's property, information, files and laptops.

108.    Defendants have no legal right to retain these funds, property, information, files or laptops.

109.     Without legal justification, Defendants refuse to repay these funds or return this property, information or these files or laptops to Centra.

110.     By taking these funds, property, information, files and laptops, Hartman has wrongfully exercised authority over these funds, property, information, files and laptops, thereby depriving Centra of its rightful possession of them.

111.     Centra seeks monetary damages from Hartman.  Centra has suffered and seeks direct and consequential damages as a result of Hartman's conversion, and Centra is entitled to recover these actual damages from Hartman in an amount to be proven at trial.

112.     Hartman's actions were taken willfully and wantonly, maliciously, intentionally, and in bad faith.

113.     As a result, Centra is entitled to recover punitive damages for Hartman's wrongful conduct.

**COUNT 5:**
**FRAUD**

114.     Centra repeats and realleges the allegations in all of the preceding paragraphs of the Complaint, as though fully set forth herein.

115.     Centra  entrusted Hartman with her employment position and the use of the P-Card and Centra credit cards and charge accounts.  Throughout their employment with Centra, Hartman represented to Centra that she would fulfill her employment duties and only use the P-Card and Centra credit cards and charge accounts for proper Centra business expenses.

116.     When Hartman made these representations to Centra and gave Centra these assurances, Hartman knowingly misrepresentation her intention to misappropriate Centra's funds and misuse the P-Card and Centra's credits cards and charge accounts for improper personal purposes.

117.    Centra relied to its detriment on the misrepresentations of Hartman by continuing to employ her and entrusting them a P-Card and Centra's credit cards and charge accounts.

118.    Hartman, however, had no intention of properly using the P-Card or Centra credit cards or charge accounts.  Instead, Hartman misappropriated Centra's funds and misused the P-Card and Centra credit cards and charge accounts for improper personal purposes.

119.    Hartman's actions are fraudulent.

120.    Centra  seeks monetary damages from Hartman.  Centra has suffered and seeks direct and consequential damages as a result of Hartman's fraud, and Centra is entitled to recover these actual damages from Hartman in an amount to be proven at trial.

121.    Hartman's actions were taken willfully and wantonly, maliciously, intentionally, and in bad faith.

122.    As a result, Centra is entitled to recover punitive damages for Hartman's wrongful conduct.

## COUNT 6:
## UNJUST ENRICHMENT

123.     Centra repeats and realleges the allegations in all of the preceding paragraphs of the Complaint, as though fully set forth herein.

124.    Hartman received purchases on her P-Card and Centra's credit cards and charge accounts, gift cards, cash or credit refunds, property, information, files and laptops from Centra to which Hartman is not entitled.

125.    Hartman has been unjustly enriched to the detriment of and at the expense of Centra, and Hartman is obligated to make restitution to Centra, and to reimburse all other amounts paid or benefits conveyed to Hartman to which Hartman is not entitled.

126.     Centra is entitled to recoup all of these payments and benefits made to Hartman, along with prejudgment interest and all other relief deemed appropriate by the Court.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Centra prays for the following relief:

1.     Centra be awarded compensatory damages against Hartman in an amount to be determined at trial pursuant to Counts 1-6 or as otherwise provided by law;

2.     Centra be awarded punitive damages against Hartman in an amount to be determined at trial pursuant to Counts 3-5 or as otherwise provided by law;

3.     That Centra's recovery against Hartman include, without limitation, forfeiture, recoupment and disgorgement of all profits, gains or other amounts received or realized by Hartman from the foregoing wrongful acts in an amount to be determined at trial pursuant to Counts 3-6 or as otherwise provided by law;

4.     Centra be awarded reimbursement of its attorneys' fees, costs and expenses against Hartman to the fullest extent permitted by law;

5.     Centra be awarded interest and costs;

6.     Centra be awarded such other and further relief as the Court deems proper.

A TRIAL BY JURY IS DEMANDED.

## Rule 38(b)(1) Jury Demand

Pursuant to Rule 38(b)(1), Defendants demand trial by jury on any and all issues so triable.

Dated:  September 7, 2021                    Respectfully submitted,

                                            ___/s/  Joshua F. P. Long_____
                                            Joshua F. P. Long (VSB No. 30285)
                                            Joshua R. Treece (VSB No. 79149)
                                            Woods Rogers PLC
                                            P.O. Box 14125
                                            10 South Jefferson Street, Suite 1400
                                            Roanoke, Virginia 24038-4125
                                            Telephone: (540) 983-7600
                                            Facsimile: (540) 983-7711
                                            jlong@woodsrogers.com
                                            jtreece@woodsrogers.com

                                            Counsel for Centra Health, Inc. and Stephanie East

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to the following counsel of record:

M. Paul Valois, Esq.
JAMES RIVER LEGAL ASSOCIATES
7601 Timberlake Road
Lynchburg, VA 24502
Phone: 434-845-4529
Fax:    434-845-8536
mvalois@vbclegal.com

Counsel for Kimberly Hartman

                            _____/s/ Joshua F. P. Long_____