IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KIMBERLY HARTMAN | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) Case No.: 6:20CV00027 |
| CENTRA HEALTH, INC., and | ) |
| STEPHANIE EAST, | ) |
|     Defendants. | ) |

**COUNTERCLAIMANT CENTRA HEALTH, INC.'S OPPOSITION TO COUNTERCLAIM DEFENDANT KIMBERLY HARTMAN'S MOTION FOR A MORE DEFINITE STATEMENT AND MOTION TO STRIKE AMENDED COUNTERCLAIMS**

Counterclaim Defendant Kimberly Hartman's ("Hartman") Motion for a More Definite Statement fails because Counterclaimant Centra Heath, Inc.'s ("Centra") Amended Counterclaims (Dkt. 90) are not "so vague or ambiguous" that Hartman "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Court need look no further than Hartman's own Motion. She devotes the majority of her brief to arguing her competing version of the facts thus confirming her understanding of Centra's allegations and her ability to respond. Mem. Supp. Countercl. Def.'s Joint Mot. (Dkt. 92) 2-11. It is disingenuous to contend otherwise.

Hartman's Motion to Strike Centra's Amended Counterclaims likewise fails because: (1) Centra's factual allegations and exhibits are relevant and material and the allegedly "impertinent and scandalous materials" merely reflect Hartman's own motivations and conduct; and (2) Centra has complied with the Federal Rules of Civil Procedure and this Court's Order dated October 8, 2021 (Dkt. 87). Hartman's arguments are self-contradictory (she establishes her ability to respond while simultaneously accusing Centra of providing too little and too much information), elevate form over substance, and rely on erroneous procedural technicalities.

After spending the first half of her brief claiming Centra's allegations are insufficient and feigning a lack of understanding of the counterclaims (Mem. Supp. 2-11), Hartman spends the remainder seeking to strike relevant and material factual allegations by claiming that they are "irrelevant, immaterial, impertinent and scandalous materials" (Mem. Supp. 11-16). She simultaneously argues that Centra's Amended Counterclaims lack sufficient facts to respond while seeking to strike those same facts as irrelevant, immaterial, impertinent and scandalous. Which is it? Too little or too much? In reality, Hartman understands Centra's allegations and is fully capable of responding to them. She simply disagrees with them. That is the purpose of an Answer.

Hartman also claims that Centra's Amended Counterclaims should be stricken because they were filed without leave of Court in violation of Federal Rule of Civil Procedure 15(a)(1)(B). Mem. Supp. 16-17. Hartman argues that Centra only had 21 days from the filing of her earlier Motion for a More Definite Statement and Motion to Strike (Dkt. 78) on September 18, 2021 (until October 11, 2021) to amend its Counterclaims without leave of Court under Federal Rule of Civil Procedure 15(a)(1)(B). This is untrue.

Centra timely and properly filed its Amended Answer and Affirmative and Other Defenses and Amended Counterclaims (Dkt. 90) on October 22, 2021 because: (1) Hartman's earlier Motion for a More Definite Statement and Motion to Strike was mooted and (2) Centra was granted leave to file its Amended Counterclaims by the Court's Order dated October 8, 2021 (Dkt. 87).

As the Court held in its Order dated October 8, 2021: (1) "Plaintiff's joint motion for a more definite statement and to strike (Dkt. 78) is deemed moot as Plaintiff filed the motion to

file Second Amended Complaint (Dkt. 83);" and (2) "Defendants shall file responsive pleadings within the time permitted under the Federal Rules of Civil Procedure." Order ¶¶ 2-3.

After Hartman filed her Second Amended Complaint (Dkt. 88) on October 8, 2021, Centra had 14 days to file its responsive pleadings, including any compulsory counterclaims under Federal Rule of Civil Procedure 15(a)(3). On October 22, 2021, Centra properly and timely filed its Amended Answer and Affirmative and Other Defenses and Amended Counterclaims (Dkt. 90). Hartman's earlier Motion was mooted (Dkt. 87 ¶ 3), meaning there is no responsive pleading on file to Centra's Counterclaims, and no 21-day deadline for amending without leave under Federal Rule of Civil Procedure 15(a)(1)(B). Centra did not need leave to file its Amended Counterclaims and regardless the Court's Order (Dkt. 87 ¶ 2) provided it.

In addition to being legally baseless, Hartman's position is again self-contradictory. She simultaneously argues that Centra should be required to amend to provide a more definite statement and remove "irrelevant, immaterial, impertinent and scandalous materials" under Federal Rules of Civil Procedure 12(e) and (f), while seeking to strike Centra's Amended Counterclaims for being filed without leave of Court under Federal Rule of Civil Procedure 15(a)(1)(B). Again, which is it? Should Centra be required to file an amendment or prohibited from doing so? In reality, Centra's Amended Counterclaims were timely and properly filed and Hartman has no legitimate grounds for complaint substantively or procedurally. Hartman dislikes that Centra asserted Counterclaims and disputes their merit. That is the purpose of an Answer.

1.      **Hartman's Motion for a More Definite Statement Should be Denied.**

Motions for a more definite statement are disfavored and are only appropriate where a complaint is "so vague or ambiguous" that a "defendant cannot reasonably be required to answer." *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 822-23 (4th Cir. 1973) (citing Fed. R. Civ. P. 12(e)); *accord Kelly v. Ammado Internet Servs., Ltd.*, 2012 WL 4829341, at *6 (E.D. Va. 2012); *Guess? Inc. v. Chang*, 912 F. Supp. 372, 381 (N.D. Ill. 1995).

Where a complaint conforms to Rule 8(a) and is "neither so vague nor so ambiguous," or where discovery is a more appropriate means of ascertaining such details, a court should deny a motion for a more definite statement. *Kelly*, 2012 WL 482934, at *6 (citing *Hodgson*, 482 F.2d at 824) (denying relief under Rule 12(e) where court determined that complaint satisfied Rule 8 and defendant was "attempt[ing] to seek through pleading what it ought to investigate through discovery"). That is the case here. Centra's Amended Counterclaims are sufficient—a responsive pleading can be framed because Hartman can either admit or deny the allegations. *Id.*

Hartman seeks information concerning the policies and agreements she is accused of violating. Specifically, Hartman requests from Centra "a more definite statement of precisely which policy she is alleged to have violated and the grounds for recoupment of her wages or other alleged damages." Mem. Supp. 3. These requests are more appropriately requested through focused written discovery, rather than a more definite statement. *See Dodge v. CDW Gov't, Inc.*, 2009 WL 1605010, at *4 (E.D. Va. 2009) (denying relief under Rule 12(e) in an employment case where requiring a more definite statement would "unnecessarily bog down these proceedings since the identification of the contract documents at issue, as well as the

documents themselves, can be most expeditiously obtained through discrete, focused interrogatories and document requests").

Hartman's requests are particularly astonishing, given that the parties have been engaged in discovery for well over a year, during which time Centra has produced more than 26,772 pages of documents responsive to Hartman's allegations and Centra's counterclaims. Among these documents includes Centra's P-Card Policy (attached hereto as **Exhibit 1**); Centra's Human Resources Policies (attached hereto as **Exhibit 2**); Centra's Confidentiality Agreement (attached hereto as **Exhibit 3**); and Hartman's signed Department Orientation form (attached hereto as **Exhibit 4**), which refers to Centra's Attendance/Absenteeism, Paid Time Off, and Breaks/Meal Periods policies. Centra has even produced an overview of the Virginia Department of Health Professions ("VDH") investigation into Hartman's fraudulent conduct, which lists specific purchases Hartman made in violation of Centra policy, such as "a video projector and screen (neither of which are allowed to be purchased from Office Depot pursuant to Centra policy)," and "$450 of gift cards from Walmart," the purchase of which "is against Centra policy." A copy of the VDH Investigation Overview is attached hereto as **Exhibit 5**.

Even if extensive discovery had not already been conducted, Centra's Amended Counterclaims provide the information Hartman purportedly seeks. Centra makes clear that she has violated her P-Card Agreement with Centra (Am. Countercls. Ex. 7), Centra's P-Card Policy (Am. Countercls. Ex. 8), her Confidentiality Agreement with Centra (Am. Countercls. Ex. 9), and Centra's time and attendance policies. Am. Countercls. ¶¶ 19-27.

Hartman feigns confusion, claiming that she does not understand how or why her split-rate shifts were improper when others also worked them. Mem. Supp. 2. Hartman's argument ignores the allegations in Centra's Amended Counterclaims which make clear the differences

between the improper split-rate shifts worked by Hartman and the actions of others. Specifically, Centra alleges:

> On May 20, 2019, Centra's Compliance Department received a call on its Compliance Hotline (the "Hotline Call") alleging that Hartman was improperly working split-rate shifts and receiving double pay, in violation of Centra's time and attendance policies. While other Centra unit managers had picked up split-rate shifts in their own units, Hartman's actions were noticeably different from and more egregious than those of her colleagues. Specifically, where other managers were picking up evenings, nights, and weekends—shifts that did not conflict with their regular, salaried positions—Hartman instead would "claim" an exempt shift over the weekend but then pick up in her split rate during the week, during the same hours as her salaried position of Unit Manager. In other words, Hartman would work a weekend shift, use that as an excuse to claim that she planned to take a day off from her salaried Unit Manager role, and then "pick up" her mandatory weekday shift in her split rate, earning an hourly rate on top of her salaried rate for working a regular, salaried shift. Upon investigating Hartman's improper use of split-rate shifts, the Compliance Department advised East to tell Hartman that she could no longer continue this practice of "claiming" shifts on the weekend and then picking up in her split rate during her defined hours as Unit Manager.

Am. Countercls. ¶ 28.

Hartman tries to create inconsistencies in Centra's position on her employment status by taking out of context irrelevant statements in discovery briefs and mischaracterizing Centra's documents. Mem. Supp. 3. There is no mystery or inconsistency here. As Hartman recognizes, Centra's Amended Answer states that on June 5, 2019, Hartman was "'asked to leave' in order to give her time to 'cool down.'" Mem. Supp. 3 (quoting Am. Answer ¶ 71). This is what happened.

As Hartman will find out in discovery, while the Risk/HR form dated June 17, 2019, states that Hartman "was suspended on June 5," (Mem. Supp. 3, Ex. C), Hartman was actually just asked to leave for the day and compose herself after melting down during the meeting with Stephanie East ("East"), and Dr. Michael Judd on June 5, 2019. While there was not an actual suspension on June 5, 2019, it doesn't really matter either way. It is all

water under the bridge based on what Hartman did next. As Centra's documents confirm and deposition testimony will further establish, Hartman's phone and email access was cut off on the evening of June 5, 2019, after she sent dozens of belligerent and combative text messages to numerous Centra employees. She was terminated on the late afternoon of June 6, 2019, for her insubordination and unprofessional conduct, her continued extortion threats to Centra management and executives, and her refusal to talk to or meet with Centra's HR department. No decision on Hartman's employment was made until the late afternoon of June 6, when it had become apparent due to her continued and increasing insubordination and misconduct that there was no other alternative but termination. She forced Centra's hand and Centra's Amended Counterclaims identify and discuss her actions and motivations for doing so.

Hartman feigns confusion, claiming that she does not know "what type of 'investigation' (or lack of one) she is alleged to have faced" that motivated her exit strategy from Centra. Mem. Supp. 5. Hartman's argument ignores the allegations in Centra's Amended Counterclaims which make clear that East explained the Corporate Compliance investigation and Hartman responded by becoming upset, claiming to be under financial pressure, suggesting she would resign, and ultimately implementing her exit strategy. Am. Countercls. ¶¶ 33-41. Centra has also produced East's summary of this interaction with Hartman, describing her efforts "to assure [Hartman] that this was a hotline call and due diligence had to be applied to the investigation, this wasn't a write up, we reached out for clarification, she gave it and basically she needs to change how she picks up going forward. Done." A copy of East's summary is attached hereto as **Exhibit 6**.

Further, Centra's Compliance investigation report, which Hartman herself has made use of (Mem. Supp. Ex. A), clearly documents the scope and intensity of the investigation. The

report states that "[a]fter a thorough investigation," which began on May 20, 2019 and was completed on May 21, 2019, the allegation was "partially substantiated" and the action taken against Hartman was "[a]dvice [g]iven."  Mem. Supp. Ex. A.  This is consistent both with Centra's Amended Counterclaims and document productions.

Hartman argues she needs more information regarding Centra's P-card fraud claim because it may be barred by the 2-year statute of limitations, "depending on the dates when the purported misrepresentations are alleged to have been made."  Mem. Supp. 7.  Hartman is wrong both factually and legally.  Centra's Amended Counterclaims describe in detail with ample specificity Hartman's P-Card fraud.  Am. Countercls. ¶¶ 64-77, 121-129.  Centra details specific acts of fraud by Hartman with names, dates, times, amounts and supporting facts, including "her misuse of her P-Card to purchase rail tickets, unapproved lunches, gift cards, and to pay for her personal malpractice insurance for nurse practitioner school," her misuse of Centra's corporate Office Depot account, and her personal purchases at Sam's Club, her returns for personal shopping cards at Sam's Club and Walmart, her personal gift card purchases, her personal Amazon Prime purchases, and her personal Netflix subscription.  Am. Countercls. ¶¶ 64-77, 121-129.

The facts are all there, spelled out with specificity in the Amended Counterclaims and supported by the over 26,772 responsive pages of documents produced during discovery—and regardless, Hartman's legal argument is baseless.  Centra's fraud counterclaim (like all of the others) is timely in its own right and because it relates back to the date of the original filing of the federal claim:  April 28, 2020.  *See Kirkpatrick v. Lenoir County Board of Education*, 216 F.3d 380, 388 (4th Cir. 2000) (recognizing that "[i]n this circuit a compulsory counterclaim relates back to the time of the filing of the plaintiff's complaint"); *Burlington Indus. v. Milliken*

*& Co.*, 690 F.2d 380, 389 (4th Cir. 1982) ("[T]he better view holds that 'the institution of the plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.'") (quoting 6 C. WRIGHT & A. MILLER, FED. PRAC. & PROC. § 1412, at 61–64 (1971)).

All of the fraudulent acts for which Centra seeks recovery occurred after April 28, 2018. But even earlier fraudulent acts would not be time barred. The 2-year limitations period does not begin to run until the alleged fraud is discovered or should have been discovered by the exercise of reasonable diligence. VA. CODE § 8.01–249. It is undisputed that Centra did not discover Hartman's P-Card fraud until its investigation that commenced on May 20, 2019, and there is no reason why Centra should have discovered it earlier. *See Gilmore v. Basic Indus., Inc.*, 233 Va. 485, 489–90, 357 S.E.2d 514 (Va. 1987) (rejecting defendants' argument that alleged fraud should have been discovered by plaintiff as a result of defaults on promissory notes). When Centra discovered, or should have discovered, Hartman's alleged fraud is a factual question that may not be appropriately resolved at this stage of the litigation.

Contrary to Hartman's argument, Centra alleges with specificity "instances of improper disclosure of confidential information by Ms. Hartman." Mem. Supp. 8-10. Centra identifies and details Hartman's destruction of Centra's iPhone and its contents, her misappropriation of Centra information and two Centra laptops, and her copying of 82 Centra files from the Lenovo Laptop onto her USB. Am. Countercls. ¶¶ 64-65, 78-82, 99-103.

Contrary to Hartman's argument, she received valid consideration for the P-Card Agreement: enrollment and participation in the Centra P-Card Program. Mem. Supp. 10-11. As her P-Card Agreement with Centra (Ex. 7) and Centra's P-Card Policy (Ex. 8) both confirm, Hartman was allowed to participate in the Centra P-Card Program and had a P-Card issued in

her name in exchange for agreeing to use the P-Card "for business related purchases only" and to "comply with Centra's P Card policy." Am. Countercls. ¶¶ 19-20. As detailed in Paragraphs 64-77 of the Amended Counterclaims, Hartman breached her P-Card Agreement by using her P-Card for personal purchases and otherwise improperly using her P-Card for personal financial gain and failing to comply with Centra's P-Card policy." Am. Countercls. ¶ 21.

Finally, the details and exhibits that Hartman relies on for her 40-page Memorandum in Support of her Joint Motion obviate her allegation that she reasonably cannot be required to file a responsive pleading. *See Blizzard v. Dalton*, 876 F. Supp. 95, 99–100 (E.D. Va. 1995) (denying motion for more definite statement where defendant submitted a well-documented motion to dismiss, showing that defendant had custody and control of employment records that formed the basis of the complaint, and noting that defendant will have an opportunity for full discovery as the case proceeds). To the extent Hartman "lacks information sufficient to form a belief as to the truth of an allegation, [she] may state so pursuant to Fed. R. Civ. P. 8(b)(5)." *Dodge*, 2009 WL 1605010, at *5. Hartman's false problem has an easy solution.

        2.        **Hartman's Motion to Strike Should be Denied.**

As Hartman recognizes, "Rule 12(f) motions are generally viewed with disfavor." Mem. Supp. 12. Hartman's own motion is no exception.

Contrary to Hartman's argument that her bankruptcy filings have nothing "to do with [her] separation of employment in 2019" (Mem. Supp. 12), her admitted financial distress was her motivation to misappropriate funds and property from Centra and implement her extortion scheme. Am. Countercls. ¶¶ 3-7, 9, 28-41. Hartman herself has produced numerous records concerning her multiple bankruptcies in discovery, an example of which is attached hereto as **Exhibit 7**. Hartman's EEOC charge and lawsuit against another former employer hospital

system (Carilion), claiming she was retaliated against for her daughter's autism (Mem. Supp. 12-13), has substantial factual similarities to the instance case and shows her pattern and practice of playing the autism card to sue employers. Am. Countercls. ¶¶ 8, 46-58. Her default on a seller-financed note and subsequent lawsuit (Mem. Supp. 12-13) shows her financial distress that motivated her actions and her pattern and practice of pursuing frivolous litigation for leverage and economic gain. Am. Countercls. ¶ 8. Hartman's emails to Centra management are not settlement demands (Mem. Supp. 13-14)—they are extortion attempts and they confirm her motivations for her actions. Am. Countercls. ¶ 6, Exs. 1-2.

Throughout these emails, Hartman recognizes that there are no ongoing negotiations and that Centra is "not acting to provide any sort of severance." Am. Countercls. Ex. 2. These are threats by Kim Hartman pure and simple that she will launch an investigation and try to shut down and destroy Centra unless she is paid. Centra never negotiated with or paid her and this is exactly what she tried to do. Thankfully, her efforts failed because Centra appropriately addressed all investigative issues. Am. Countercls. ¶ 6, Exs. 1-2.

Hartman takes issue with counsel's language including use of the terms "extortion," "freaked out," "embezzlement," "get rich schemes," "stealing," "shakedown," and "epic meltdown." Mem. Supp. 14-16. This language is accurate and simply reflects Hartman's own motivations and actions. The record speaks for itself. If Hartman does not like certain terminology, she is free to Answer the Counterclaims by denying them. What she cannot do is micromanage the opposing party's pleading or word choice. For someone who has spilled much ink vilifying Centra unjustly, Hartman should have thicker skin—particularly when faced with counter accusations that are true and readily established by actual evidence. Am. Countercls. ¶¶ 3-93, Exs. 1-11.

Finally, contrary to Hartman's argument (Mem. Supp. 16-17), Centra timely and properly filed its Amended Answer and Affirmative and Other Defenses and Amended Counterclaims (Dkt. 90) on October 22, 2021. Centra's Amended Counterclaims are timely and proper for two reasons: (1) Hartman's earlier Motion for a More Definite Statement and Motion to Strike was mooted negating any deadline for amending without leave under Federal Rule of Civil Procedure 15(a)(1)(B); and (2) Centra was granted leave to file its Amended Counterclaims by the Court's Order dated October 8, 2021 (Dkt. 87).

As the Court held in its Order dated October 8, 2021: (1) "Plaintiff's joint motion for a more definite statement and to strike (Dkt. 78) is deemed moot as Plaintiff filed the motion to file Second Amended Complaint (Dkt. 83);" and (2) "Defendants shall file responsive pleadings within the time permitted under the Federal Rules of Civil Procedure." Order (Dkt. 87) ¶¶ 2-3.

After Hartman filed her Second Amended Complaint (Dkt. 88) on October 8, 2021, Centra properly and timely filed its Answer and Affirmative and other Defenses and Amended Counterclaims within 14 days on October 22, 2021. See Federal Rule of Civil Procedure 15(a)(3). With Hartman's earlier motion having been mooted (Dkt. 87 ¶ 3), there was no 21 day or other deadline for amending without leave. See Federal Rule of Civil Procedure 15(a)(1)(B). Centra did not need leave to file its Amended Counterclaims and regardless the Court's Order (Dkt. 87 ¶ 2) provided it.

**Conclusion**

For the reasons set forth above, Hartman's Joint Motion for a More Definite Statement and Motion to Strike Amended Counterclaims should be denied. Hartman should cease her procedural posturing, answer Centra's Amended Counterclaims, and move forward with discovery.

Dated:  November 12, 2021    Respectfully submitted,

   /s/  Joshua F. P. Long
Joshua F. P. Long (VSB No. 30285)
Joshua R. Treece (VSB No. 79149)
Woods Rogers PLC
P.O. Box 14125
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24038-4125
Telephone: (540) 983-7600
Facsimile: (540) 983-7711
jlong@woodsrogers.com
jtreece@woodsrogers.com

Counsel for Centra Health, Inc. and Stephanie East

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to the following counsel of record:

M. Paul Valois, Esq.
JAMES RIVER LEGAL ASSOCIATES
7601 Timberlake Road
Lynchburg, VA 24502
Phone: 434-845-4529
Fax:    434-845-8536
mvalois@vbclegal.com

Counsel for Kimberly Hartman

   /s/ Joshua F. P. Long