**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **KIMBERLY HARTMAN,** | **:** | |
| *Plaintiff* | **:** | |
| | **:** | |
| **v.** | **:** | **CASE NO.   6:20CV00027** |
| | **:** | |
| **CENTRA HEALTH, INC.,** *et al,* | **:** | |
| *Defendants.* | **:** | |

**MEMORANDUM IN SUPPORT OF COUNTERCLAIM DEFENDANT KIMBERLY HARTMAN'S JOINT MOTION TO STRIKE CENTRA'S SECOND AMENDED COUNTERCLAIMS FOR VIOLATION OF RULE 15, FOR A MORE DEFINITE STATEMENT OF CENTRA'S SECOND AMENDED COUNTERCLAIMS PURSUANT TO RULE 12(e) AND TO DISMISS COUNT FIVE FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6) AND**

Counterclaim Defendant Kimberly Hartman ("Ms. Hartman"), by counsel, submits this Memorandum in support her Joint Motion to Strike Centra's Second Amended Counterclaims (ECF 99) for Violation of Rule 15, for a More Definite Statement of Centra's Second Amended Counterclaims Pursuant to Rule 12(E) and to Dismiss Count Five for Failure to State a Claim Pursuant to Rule 12(B)(6).

**I.      MOTION TO STRIKE CENTRA'S SECOND AMENDED COUNTERCLAIMS BECAUSE THEY WERE UNTIMELY AND WERE FILED WITHOUT LEAVE**

Centra filed its first Counterclaims on September 7, 2021 and Ms. Hartman responded with a Joint Motion to Dismiss the counterclaims pursuant to Rules 12(e) and 12(f) filed on September 17, 2021.  Centra filed its Amended Counterclaims on October 22, 2021.  Ms. Hartman, by counsel, agreed to permit Centra to file its Second Amended Counterclaims by the end of February of this year.  However, Centra did not seek leave to further amend its counterclaims and did not file its Second Amended Counterclaims until March 4, 2021.  Counsel for Ms. Hartman did not agree to extend the time for filing past the end of February.  For these

reasons, the Second Amended Counterclaims should be stricken because there are untimely and because they were filed without leave of court pursuant to Rule 15(a)(2).

## II.       MOTION FOR A MORE DEFINITE STATEMENT

### THE NATURE OF CENTRA'S INVESTIGATION

Centra alleges that it began an investigation into the false[1] allegation made on May 20, 2021 that Ms. Hartman violated Centra policy by working "split rate shifts." (SACC ¶ 3)  Centra further claims that "during the course" of this investigation, Centra "reviewed Ms. Hartman's pay stubs and discovered ongoing payroll deductions of an unusual and large nature and large amount and size, including substantial loan payments and gift shop payments."  Ibid.  Further, "[t]his discovery prompted a closer review of Hartman's P-Card expenses, which ultimately revealed numerous charges…" Ibid.  Centra alleges that Ms. Hartman learned of the "pending investigation" on May 28, 2019. (SACC ¶ 4)  Centra alleges that Ms. Hartman's knowledge of the investigation prompted her "purported EMTALA concerns." (SACC ¶ 5)  To this end, Centra alleges that Ms. Hartman's supervisor, defendant Stephanie East "reached out" to Ms. Hartman on May 28, 2019 to explain to Ms. Hartman that Centra's Corporate Compliance Department was investigating her split rate shifts. (SACC ¶ 28)  The clear implication is that Ms. Hartman became motivated by May 28, 2019 to concoct false EMTALA claims because she knew that Centra was investigating her for breaching "contractual and fiduciary duties" in addition to her working split rate shifts. (SACC ¶ 5)

There are some honking big problems with these claims.  Unlike a Rule 12(B)(6) motion, Centra cannot shelter itself within the text of its allegations.  Instead, with regard to this motion,

---

[1]   Centra's one-day investigation determined on May 21, 2019 that Ms. Hartman had not violated any Centra policy and that she was paid appropriately for the split rate shifts she worked.  The investigation determined that the split rate policy needed to be changed.

it has to reckon with the extensive discovery that has been conducted to date and with the other evidence that lies outside of its pleadings.  Probably Centra's biggest problem is that, according to the report of its Compliance Department, the investigation into Ms. Hartman's split rate shifts began and ended on May 21, 2019 with findings that Ms. Hartman (i) did not violate any policy and (ii) was paid appropriately for working her split rate shifts.  The complaint was only "partially substantiated" to the extent that found that Ms. Hartman did the work she said she did and that no Centra policy prevented it.  A copy of this report is attached hereto and incorporated herein as **EXHIBIT A**.  So there was actually no "pending investigation" against Ms. Hartman on May 28, 2019, despite Centra's claim to the contrary.

Although Centra concluded its split rate shift investigation a week before May 28, 2019, it tries to instill the illusion that there was some other "investigation" under way regarding Ms. Hartman and that this fictitious "investigation" spurred her to fabricate her report of an EMTALA violation on June 2, 2019.  The problem here lies in the fact that nowhere in the thousands of pages of documents provided in discovery is there any reference to any such investigation occurring until after Ms. Hartman was fired on June 6, 2019.[2]  Obviously, any investigation that began after Ms. Hartman was terminated could not possibly have motivated her to make any report while she was employed.

Finally, Centra alleges that the fact that Ms. Hartman discovered and reported EMTALA violations on June 2, 2019 somehow positively proves that her report was prompted by the knowledge of "Centra's investigation" that she purportedly acquired on May 28, 2019.  The biggest problem (of many) with this allegation is that the particular juvenile patient transfer

---

2   Ms. Hartman alleged (and Centra agrees) that Ms. Hartman's employment was terminated on June 6, 2019.
    However, evidence is mounting that she was actually terminated a day earlier and so this allegation may need to
    be corrected or amended after further discovery has been conducted.

requests and denials that formed the basis of Ms. Hartman's EMTALA claims were not made until June 1, 2019. Although Ms. Hartman undoubtedly would have reported the June 1st EMTALA violations on or before May 28th if she could possibly have done so, she was restrained and prevented from making such an early report by the limitations of the anti-time travel provisions of the laws of relativistic mechanics, not by her purported knowledge of any non-existent Centra investigation.

Centra claims that on May 22, 2019, Centra's Corporate Compliance Department asked for Ms. Hartman's P-Card report. (SACC ¶ 28)  However, Shannon Meadows, former Centra HR Director, testified in her deposition that during this period the Compliance Department was conducting a general investigation that arose from an audit of P-Card use by all Centra employees, not any specific investigation into Ms. Hartman's use of her P-Card.  And excerpt of the transcript of this deposition is attached hereto and incorporated herein as **EXHIBIT B**. Thus, the Compliance Department asked for everybody's P-Card report, not just Ms. Hartman's. Again, through carefully worded implication, Centra leaps temporally forward in the next sentence to an unspecified date by vaguely alleging that "[u]pon a more comprehensive review," the Compliance Department discovered Ms. Hartman's purported misuse of P-Card. Ibid.  Once again, the problem here is the timing and the devil for Centra lies in the details of the discovery documents it produced.  There is not a single shred of evidence that Centra's Corporate Compliance Department (or anyone else) conducted any review of Ms. Hartman's spending until after her report of the EMTALA violations on June 2, 2019.

If Centra wants to claim that Ms. Hartman was motivated to lie somehow by the knowledge that she was under some sort of investigation, it needs to do a better job squaring its

allegations with its own records by stating a definite, plausible factual foundation for the allegation, and by alleging, instead of merely implying, that any such investigation was actually under way on or before June 2, 2019, when Ms. Hartman reported the EMTALA violations.  The current allegation is simply not plausible because it is directly contradicted by Centra's own records.

With regard to discovery production to date, Centra is swimming with the sharks.  It has clearly claimed attorney-client and work product privileges with all of the documents that relate to these purported "investigations," because almost no such documents have been produced.  If Centra is actually alleging that these purported investigations <u>predated</u> Ms. Hartman's EMTALA complaints, it consequently shoots each of these these privileges squarely through both feet and entirely out of the water.  Centra needs to be more detailed and forthcoming in its allegations.

## ALLEGATIONS OF FRAUD

Count five of Centra's Second Amended Counterclaims alleges fraud. (SACC ¶ 116) Virginia requires a higher burden of proof – clear and convincing evidence – of each and every one of the six elements of civil fraud.  Fraud claims are also subject to a heightened pleading standard under the Federal Rules of Civil Procedure.  Rule 9(b) requires that a party "alleging fraud . . . must state with particularity the circumstances constituting fraud . . . " Fed. R. Civ. P. 9(b).  Under that rule, the claimant must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 784 (4th Cir. 1999)

The statute of limitations for fraud cases in Virginia demands that an action be filed no later than two years from the time the cause of action accrues. Va. Code § 8.01-243.  An action accrues when the alleged misrepresentation is either discovered, or, by the exercise of due diligence, reasonably should have been discovered.  Va. Code § 8.01-249(1)

Centra alleges that it ". . . entrusted Hartman with her employment position and the use of the P-Card and Centra credit cards and charge accounts. Throughout her employment with Centra, Hartman represented to Centra that she would fulfill her employment duties and only use the P-Card and Centra credit cards and charge accounts for proper Centra business expenses. (SACC ¶ 117) Centra further claims that "[w]hen Hartman made these representations to Centra and gave Centra these assurances, Hartman knowingly misrepresented her intention to misappropriate Centra's funds and misuse the P-Card and Centra's credits cards and charge accounts for improper personal purposes." (SACC ¶ 118)

As a general rule, "fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Soble v. Herman*, 175 Va. 489, 500, 9 S.E.2d 459, 464 (1940).  The reason underlying the general rule is that "a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character."  Id.  Thus, any promise or acknowledgment Ms. Hartman may have made to Centra in 2014 cannot support a claim of fraud with regard to transactions that occurred in 2018.

Moreover, Centra has stated neither the times when Ms. Hartman made these purported misrepresentations nor the places where the purported misrepresentations were made, but has instead vaguely alleged that they occurred "throughout" Ms. Hartman's employment.  The only

evidence given of a particular date is October 14, 2014, the date of execution of the P-Card agreement.  The timing of the purported misrepresentations is crucial.  Centra alleges that Ms. Hartman was placed on a Performance Improvement Plan for, among other things, misusing her P-Card. (SACC ¶ 27)  Centra admitted during discovery that this Performance Improvement Plan began on June 27, 2018.  Any fraud committed by use of the P-Card, was, or should have been, discovered by then at the latest.

However, Ms. Hartman's supervisor, Stephanie East, gave a statement to Virginia State Police investigator Joe Crabtree in which she admitted that Ms. Hartman would present her P-Card Statements and receipts to Ms. East for review and approval each month.  A copy of the summary of this interview is attached hereto and incorporated herein as **EXHIBIT C**.  Thus, Centra discovered, or should reasonably have discovered, Ms. Hartman's purported misrepresentations much earlier than June 27, 2018.

Ms. Hartman filed her first Complaint on April 28, 2020.  Assuming, *arguendo*, the unlikely possibility that this Court determines that Centra's allegations arose from the same "transaction or occurrence" that relates to Ms. Hartman's EMTALA claims, and that the two-year period of limitations that pertains to Centra's Second Amended Counterclaims was tolled when Ms. Hartman filed her original Complaint by operation of Code of Virginia § 8.01-233(B), any any claims based on her purported misrepresentations that predate April 28, 2018 would be time barred.[3]

Centra filed its first Counterclaims on September 7, 2021.  If the Court determines that Centra's allegations do not arise from the same "transaction or occurrence" that relates to Ms.

---

3   Plaintiff recognizes that motions filed under Rule 12 are not the proper mechanism for asserting the affirmative defense of a time bar.  She merely seeks a more definite statement in order to properly frame such a defense in her Answer, assuming she is required to answer.

Hartman's EMTALA claims, then any claims based on purported misrepresentations that predate September 7, 2019 would be time barred.[4]

Given all of the above, Centra's fraud claims may not be timely, depending on the dates when the purported misrepresentations are alleged to have been made.  Ms. Hartman needs the information required by the heightened pleading standard in order to properly answer and to appropriately assert her affirmative defenses, including the application of the two-year period of limitation that may pertain to some or all of the false representations she is alleged to have made. Thus, Ms. Hartman requests that the Court order Centra to more definitely state its allegations of fraud in conformity with Rule 9(b).

## III.   PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE CLAIMS PURSUANT TO RULE 12(B)(6)

### COUNT 5 – FRAUD

As requested above, Ms. Hartman seeks a more definite statement with regard to Centra's allegations of fraud.  Alternatively, for the same reasons, she seeks dismissal of the count for failure to state a claim as "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 784 (4th Cir. 1999)

### CONCLUSION

For all of the above reasons, Ms. Hartman requests the Court to (i) strike Centra's counterclaims in their entirety or, alternatively, (ii)  provide a more definite statement of its

---

4    Of course, Ms. Hartman was no longer employed by Centra on September 7, 2019 and so a more definite statement of the time and place of Ms. Hartman's purported misrepresentations may lead to summary judgment on the issue of fraud.

counterclaims as described above, or alternatively, (ii) strike Count 5 of Centra's Second

Amended Counterclaims for failure to state a claim.

Respectfully submitted,

**KIMBERLY HARTMAN**
**By Counsel**


**By: /s/ M. Paul Valois**
**M. Paul Valois (VSB No. 72326)**
**Counsel for Counterclaim Defendant**
**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**Telephone: (434) 845-4529**
**Facsimile: (434) 845-8536**
**[Email: mvalois@vbclegal.com]**


## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2022, I electronically filed the foregoing Memorandum with the Clerk of this Court using the CM/ECF system, which will automatically send notice of this filing to all counsel of record.


/s/  M. Paul Valois